65 P.3d 197

**MDS INVESTMENTS, LLC, an Idaho Limited Liability Company, and J. Hill Investments, LLC, an Idaho Limited Liability Company, Plaintiffs–Appellants,**

v.

**The STATE of Idaho, The Idaho Department of Law Enforcement and Alan G. Lance, Attorney General of the State of Idaho, Defendants–Respondents.**

**J. Hill Investments, LLC, an Idaho Limited Liability Company, Plaintiff–Appellant,**

v.

**The City of Boise, Idaho, a Municipal corporation, and Susan Lynn Mimura, City Attorney of the City of Boise, Defendants–Respondents.**

No. 27778.

Supreme Court of Idaho, Boise, December 2002 Term.

Feb. 26, 2003.

Eberle, Berlin, Kading, Turnbow & McKlveen, Chartered, Boise, for appellants. Mark S. Geston argued.

Hon. Alan G. Lance, Attorney General; Clinton E. Miner, Deputy Attorney General, Boise, for respondents State of Idaho, Idaho Department of Law Enforcement, and Alan G. Lance. Clinton Miner argued.

Boise City Attorney's Office, Boise, for respondents City of Boise, Idaho, and Susan Lynn Mimura. Randall S. Grove argued.

EISMANN, Justice.

This is an appeal from a judgment holding that video machines owned and operated by the Plaintiffs are illegal gambling devices. We affirm the judgment of the district court.

## I. FACTS AND PROCEDURAL HISTORY

The plaintiffs MDS Investments, LLC, and J. Hill Investments, LLC, own vending machines called "Free Spin" and "Free Draw" (herein "video machines"). On May 28, 1999, law enforcement officials seized in Canyon County three video machines owned by MDS Investments. On July 1, 1999, law enforcement officials seized in Ada County three video machines owned by J. Hill Investments. Law enforcement officials seized the video machines because they were alleged to be illegal gambling devices.

On September 10, 1999, the Plaintiffs filed an action against the State of Idaho, the Idaho Department of Law Enforcement, and Attorney General Alan G. Lance (herein "State") seeking the return of the six video machines and a declaratory judgment that the video machines were not illegal gambling devices. On August 21, 2000, the Plaintiffs filed an amended complaint against the State in which it added claims for declaratory relief holding that Idaho Code §§ 18–1801, 18–3802, and 18–3810(1) are unconstitutional and for injunctive relief prohibiting the State from seizing Plaintiffs' video machines and from instituting any civil or criminal action against the Plaintiffs based upon or arising out of their ownership, operation, or use of the video machines.

On April 7, 2000, J. Hill Investments filed an action against the City of Boise, Idaho, and City Attorney Susan Mimura (herein "Boise City") seeking a declaratory judgment that its video machines were not illegal gambling devices; a declaratory judgment that certain sections of the Boise City Code relating to gambling were unconstitutional; and an injunction prohibiting Boise City from seizing J. Hill Investments' video machines in the future and from instituting any criminal or legal proceedings against it because of its ownership, operation, or use of the video

machines. Both cases were consolidated by court order entered on June 7, 2000.

On July 18, 2000, the Plaintiffs filed a motion asking the district court to partially realign the parties with respect to the declaratory judgment counts in their complaints by which they sought a declaration that the ownership and use of the video machines were legal. The Plaintiffs argued that because these counts involved the construction and application of criminal statutes, the Plaintiffs should be defendants, and the State and Boise City should be required to prove beyond a reasonable doubt that it was illegal to own or use the video machines. The district court denied the motion because of a lack of authority supporting the motion and because, if the parties were partially realigned as requested, the Plaintiffs declined to be bound in any subsequent criminal proceedings by any adverse ruling in these cases. The Plaintiffs renewed this motion several times during the course of the proceedings, and the district court denied it each time.

This matter was tried to the district court in February 2001. Thereafter, the court issued its memorandum decision and order holding that Boise City Code §§ 6–3–2, 6–3–6, 6–3–7, and 6–3–9 were void as being either unconstitutional or preempted by state law; that Idaho Code §§ 18–3801, 18–3802, and 18–3810 were not unconstitutionally vague; that the video machines were illegal gambling devices under Idaho law; and that the district court would not reverse its prior decision regarding the burden of proof.

The Plaintiffs then filed post-trial motions, including a motion asking the district court to rule on whether the video machines would be legal if they were operated in a manner different from that presented to the district court during the trial. The district court denied that motion on the ground that it would be merely an advisory opinion. The district court also granted the request to certify the order as a final judgment under Rule 54(b) of the Idaho Rules of Civil Procedure. The Plaintiffs then filed this appeal.

## II. ISSUES ON APPEAL

A. Did the district court err in refusing to reallocate the burden of proof as requested?

B. Did the district court err in holding that Idaho Code § 18–3810 was not unconstitutionally vague?

C. Did the district court err in holding that the video machines were illegal gambling devices?

D. Did the district court err in refusing to rule on whether the video machines would be illegal gambling devices if they were operated in some other manner?

E. Is the State entitled to an award of reasonable attorney fees?

## III. ANALYSIS

### A. Did the District Court Err in Refusing to Reallocate the Burden of Proof as Requested?

On July 18, 2000, the Plaintiffs filed a motion asking the district court to partially realign the parties with respect to the declaratory judgment counts in their complaints by which they sought a declaration that the ownership and use of the video machines were legal. The Plaintiffs argued, "This Motion is based upon the fact that by seeking the construction of criminal statutes, Plaintiffs have, in practical legal effect, asked the Court to apply such statutes as they would be applied in a criminal case against the Machines." They therefore asked that the Defendants be required to prove beyond a reasonable doubt that the machines were gambling devices or slot machines. The district court denied the motion on September 19, 2000.

The Plaintiffs later renewed the motion, and in its memorandum decision entered on May 11, 2002, the district court again denied it. After the district court issued its memorandum decision, the Plaintiffs filed a motion to amend the findings of fact and conclusions of law in which the Plaintiffs again asked the district court to reconsider its prior ruling on shifting the burden of proof. The district court again denied the motion.

On appeal, the Plaintiffs argue that if these two lawsuits were criminal prosecutions, they would be entitled to the presumption of innocence and the State would be required to prove guilt beyond a reasonable doubt. They contend that they brought these lawsuits seeking declaratory judgments because they were threatened with criminal prosecution and wanted their rights defined without having to risk arrest, criminal conviction, fine and incarceration. They assert that the efficacy of using declaratory judgment for this purpose is diminished if they are not granted the presumption of innocence and the Defendants are not required to prove guilt beyond a reasonable doubt.

 The requirement that guilt be proven beyond a reasonable doubt is a requirement of due process in order to protect the accused in a criminal case. *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The presumption of innocence is the right of a criminal defendant to be acquitted unless the prosecution proves his guilt beyond a reasonable doubt. *Coffin v. United States*, 156 U.S. 432, 15 S.Ct. 394, 39 L.Ed. 481 (1895). These rights apply to persons who are defendants in criminal proceedings. Not only are these two lawsuits not criminal proceedings, but the video machines that are the subject of the lawsuits are not persons.

The Plaintiffs contend that they should be entitled to have their rights defined in a declaratory judgment action so that they do not have to risk criminal prosecution. Their rights could be defined in these declaratory

judgment actions only if this Court were to hold that a judgment in their favor in these actions could bar a subsequent criminal prosecution under the doctrine of res judicata,[1] or that an adverse ruling would establish their criminal liability. If we were to so hold, it would, in effect, enable persons suspected of criminal activity to take control of their own criminal prosecutions. They could determine whether and when to commence the prosecutions and what offense(s) to charge, thereby interfering with the discretion that rightfully belongs to the prosecuting attorney. We therefore hold that the district court did not err in refusing to require the Defendants to prove beyond a reasonable doubt that the video machines were gambling devices or slot machines.[2]

**B. Did the District Court Err in Holding that Idaho Code § 18–3810 Was Not Unconstitutionally Vague?**

 Idaho Code § 18–3810 (1997) provides:

> **Slot machines—Possession unlawful—Exception.—**(1) Except as otherwise provided in this section, it shall be a misdemeanor and punishable as provided in section 18–3801, Idaho Code, for any person to use, possess, operate, keep, sell, or maintain for use or operation or otherwise, anywhere within the state of Idaho, any slot machine of any sort or kind whatsoever.

---

1. If the judgment in the declaratory judgment action could not be used defensively to bar a subsequent criminal prosecution, then it would not define the Plaintiffs' rights in the manner that they desire. Because the judgment would not bar relitigation of the same issues in a later criminal proceeding, the judgment would simply constitute the opinion of the trier of fact in the declaratory judgment action regarding the Plaintiffs' possible criminal culpability if they were later charged with crimes. The Plaintiffs can obtain opinions regarding their criminal culpability from their counsel. There is no need to alter the burden of proof in order to enable them to obtain a second opinion from the trier of fact in the declaratory judgment action.

2. The Plaintiffs did not ask that the Defendants be required to prove by a preponderance of the evidence that the video machines were illegal

gambling devices or slot machines. Law enforcement officers had seized the Plaintiffs' video machines, contending that they were unlawful gambling devices, and the relief requested by the Plaintiffs in these lawsuits included having the machines returned to them. The record indicates that law enforcement officers justified seizing and retaining the video machines solely on the ground that they were illegal gambling devices or slot machines. Under these circumstances, a Defendant who had possession of and refused to return any of the Plaintiffs' video machines should have had the burden of establishing a right to retain possession of such property. That would place upon such Defendant the burden of proving by a preponderance of the evidence that the video machines in that Defendant's possession were illegal gambling devices or slot machines.

(2) The provisions of section 18–3804, Idaho Code, shall not apply to antique slot machines. For the purpose of this section, an antique slot machine is a slot machine manufactured prior to 1950, the operation of which is exclusively mechanical in nature and is not aided in whole or in part by any electronic means.

(3) Antique slot machines may be sold, possessed or located for purposes of display only and not for operation.

(4) An antique slot machine may not be operated for any purpose.

The Plaintiffs argue that the statute is unconstitutionally vague because it does not provide a definition of "slot machine."

 The meaning and effect of a statute is a question of law over which this Court exercises free review. *State v. Hart*, 135 Idaho 827, 25 P.3d 850 (2001). The void-for-vagueness doctrine is an aspect of due process, which requires that the meaning of a criminal statute be determinable. *State v. Cobb*, 132 Idaho 195, 969 P.2d 244 (1998). Due process requires that individuals be informed of what the law commands or forbids and that people of common intelligence not be forced to guess at the meaning of the statute. *Id.* Additionally, a vague statute invites arbitrary and discriminatory enforcement. *Id.* A statute should not be held void for vagueness if it can be given any practical interpretation. *State v. Hart*, 135 Idaho 827, 25 P.3d 850 (2001). Moreover, possible infirmity for vagueness may be avoided if the statute is given a limiting judicial construction consistent with the apparent legislative intent and comporting with constitutional limitations. *State v. Cobb*, 132 Idaho 195, 969 P.2d 244 (1998).

The statute in question applies to "any slot machine of any sort or kind whatsoever." The statute clearly applies to the old, mechanical slot machines. It permits the sale, possession, and display of antique slot machines, as long as they are not operated for any purpose. It defines an antique slot machine as "a slot machine manufactured prior to 1950, the operation of which is exclusively mechanical in nature and is not aided in whole or in part by any electronic means." A player activated such slot machines by inserting a coin into a slot and pulling a lever on the side of the machine. An internal mechanical apparatus determined, solely by chance, whether any coins would be won on that play of the machine and, if so, how many. The pull of the lever activated spinning reels with symbols on them, and when the reels stopped, the symbols indicated, in conjunction with the payoff chart, whether any coins were won and, if so, how many. If coins were won on that play, the machine would eject the correct number into a tray in the front of the machine.

The legislature intended that Idaho Code § 18–3810 apply to more than antique slot machines whose internal workings were exclusively mechanical, however. It applies to slot machines "of any sort or kind whatsoever." Over the years, the technology of slot machines has changed. Exclusively mechanical slot machines gave rise to electrical machines, in which electrical motors and solenoids were used to spin and stop the reels and, in some, photoelectric cells were used to determine the position of the reels so that the machine paid according to the result shown. Incorporating that technology did not change the nature of the device from a slot machine into some other type of gambling device. Later, slot machines were modified so that the outcome of each pull is determined by a microprocessor and software programming (random number generator) rather than by the motion of the reels. The internal computer uses step motors to turn each reel and to stop it at a predetermined point to correspond to the result already randomly selected by the computer. That alteration did not change the basic nature of the machine, however. It was still a slot machine. The outcome of each play was still determined solely by chance, regardless of whether that determination was made by a mechanical device or by a random number generator.

Slot machines were also modified so that they could be activated either by pulling the lever or by pushing a button. Manufacturers of some slot machines eliminated the lever and produced slot machines that are activated solely by pushing a button. The means of activation, whether by pulling a lever or

pushing a button, did not change the nature of the device. It was still a slot machine.

Because the spinning reels on modern machines simply display the outcome and have nothing to do with its determination, changing them into a video or other representation of reels will not change the nature of the machine. It will still be a slot machine.

Someone playing the old-style slot machine placed a bet by inserting a coin into a slot, and the machine paid winnings by dropping coins into a tray. New technology has altered the manner in which bets are placed and winnings are paid, but such changes do not transform a slot machine into some other gambling device. Thus, the device is still a slot machine even though the player uses a token, bill, or credit account to place a bet, and the machine pays winnings by dispensing a token or receipt or by adding credits to the player's account.

Considering the technological changes, a slot machine is a gambling device which, upon payment by a player of required consideration in any form, may be played or operated, and which, upon being played or operated, may, solely by chance, deliver or entitle the player to receive something of value, with the outcome being shown by spinning reels or by a video or other representation of reels. Because a slot machine is a gambling device, there must be risk—the chance of losing all or part of the consideration paid; and there must be a prize—the chance of obtaining something of greater value than the consideration risked. It does not matter whether the slot machine is mechanical, electrical, video, or electronic; whether it is played by pulling a lever or pushing a button or activated in some other manner; whether the consideration is paid by coin, bill, token, credit, or otherwise; or whether the prize is paid in coins, bills, tokens, credits, receipts, merchandise, or in some other thing of value. This definition is sufficiently definite so that people of common intelligence do not have to guess at what a slot machine is. Therefore, we hold that Idaho Code § 18-3810, as herein interpreted, is not unconstitutionally vague.

## C. Did the District Court Err in Holding that the Video Machines Were Illegal Gambling Devices?

■ The Plaintiffs' video machines are generally located in taverns and restaurants, especially those with a sports atmosphere. A player activates the machine by inserting a $1, $5, $10, or $20 bill. When the player inserts the bill, the machine activates its video screen, which displays 20 credits for each dollar paid. It also dispenses one sports card for each dollar paid. The sports cards are the typical trading cards depicting players and teams from various sports, such as baseball, football, basketball, and hockey.

A player can also obtain a "free-play voucher" by requesting one from the attendant at the establishment in which the machine is located; by completing and mailing to the Plaintiffs a form requesting a free-play voucher; or by calling a toll-free number and requesting a voucher. A person can only use one voucher per day at each video machine location, and only one voucher per day will be given or mailed to anyone who requests it. If the player presents a voucher to an attendant, the attendant can use a key to activate the machine without the payment of any money. In that instance, the screen will display 20 credits, but the machine will not dispense a sports card. The rules of play and the odds of winning are the same whether play is initiated by inserting money or by presenting a voucher.

The player must bet at least eight, but not more than 64, credits per play. A player who pays one dollar to play the machine can play at most two times unless the player wins additional credits. On each play, the computer determines, solely by chance, whether the player wins and, if so, how many credits he or she wins. The credits won are displayed on the screen separately from the initial credits. Once the initial credits have been expended, the player can continue playing by betting any credits won. Whenever the player terminates play and has credits remaining that he or she has won, the player can request and receive from the attendant a claim form entitling him or her to 5¢ per

credit.[3] The manufacturer sets the maximum amount that can be won. According to the rules, it is $600, although the machine used as a demonstration during the trial was set so that the maximum amount that could be won was $500. The machine demonstrated in court had a video representation of three slot machine reels bearing symbols typical of slot machine reels such as bars, cherries, and bells.

The Plaintiffs argued to the district court that their machines were not gambling devices because no consideration was required to play the games. According to the Plaintiffs, the players simply buy sports cards that are approximately worth the dollar purchase price and then play the video games for free. The Plaintiffs presented testimony that, although the sports cards cost the Plaintiffs 3¢ to 5¢ each, their fair market value is, on average, 85¢ each. The district court held that regardless of whether the sports cards were approximately worth the dollar paid, the video machines were gambling devices because a player could play additional games by wagering any credits won. It was the ability to risk those credits, which were worth 5¢ each, for the chance of winning more that constituted the consideration required for gambling.

In holding that the video machines were illegal gambling devices, the district court relied upon the definition of "gambling" provided by Idaho Code § 18-3801.[4] The Plaintiffs argue that illegal gambling must have three elements: consideration, chance, and a valuable prize. They contend that the element of consideration is lacking because players receive a sports card worth about 85¢

for each dollar inserted in the machine. The Plaintiffs assert that, in order for their video machines to be gambling devices, all of the price paid must be devoted to the opportunity of playing a game of chance. According to the Plaintiffs, if a player receives a genuine item of retail commerce in exchange for the price paid, the price paid cannot constitute consideration for gambling, regardless of the disparity between the price paid and the value of the item. The Plaintiffs state that we should construe consideration as an element of gambling in the same manner that we construed the element of chance in *Oneida County Fair Bd. v. Smylie*, 86 Idaho 341, 386 P.2d 374 (1963).

In the *Oneida County Fair* case, we were not concerned with what constitutes gambling. The issue in that case was whether the pari-mutual system of wagering on horse races constituted a lottery. As this Court stated, "The sole issue in this proceeding is not whether conducting a pari-mutuel system of wagering under the provisions of the [Idaho Horse Racing] Act constitutes gambling, but whether the operation of such a system of wagering on horse races is a lottery within the meaning of the constitutional prohibition." 86 Idaho at 346, 386 P.2d at 376. This Court held that betting on horse races did not constitute a lottery because the outcome was not determined solely by chance, which is a necessary element in a lottery. "[The Idaho Horse Racing Act] is not in contravention of the prohibition of [the former constitutional provision] inasmuch as the pari-mutuel system of wagering on horse racing meets, as provided in that chapter, is not one solely based on chance, which constitutes

---

**3.** A player can receive 5¢ each only for credits won, not for any remaining initial credits.

**4.** Idaho Code § 18-3801 (1997) provides as follows:

> **18-3801. Gambling defined.**—"Gambling" means risking any money, credit, deposit or other thing of value for gain contingent in whole or in part upon lot, chance, the operation of a gambling device or the happening or outcome of an event, including a sporting event, the operation of casino gambling including, but not limited to, blackjack, craps, roulette, poker, bacarrat [baccarat] or keno, but does not include:

> (1) Bona fide contests of skill, speed, strength or endurance in which awards are made only to entrants or the owners of entrants; or
> (2) Bona fide business transactions which are valid under the law of contracts; or
> (3) Games that award only additional play; or
> (4) Merchant promotional contests and drawings conducted incidentally to bona fide nongaming business operations, if prizes are awarded without consideration being charged to participants; or
> (5) Other acts or transactions now or hereafter expressly authorized by law.

an essential requisite of a lottery." 86 Idaho at 368, 386 P.2d at 391.

In the instant case, the issue decided by the district court was not whether playing the Plaintiffs' video machines constituted a lottery. The issue was whether playing the machines constituted gambling as defined by Idaho Code § 18–3801. That statute states, " 'Gambling' means risking any money, credit, deposit or other thing of value for gain contingent in whole or in part upon lot, chance, the operation of a gambling device." All that is required is the risking of "any money, credit, deposit or other thing of value." The district court correctly held that risking credits worth 5¢ each fit within the statute.

The Plaintiffs next argue that consideration is lacking because of the "free-play voucher" option. During the year 2000, the plaintiff J. Hill Investments, LLC, had gross receipts of $3.8 million and allowed players to use a total of 300 vouchers. The voucher option has absolutely no bearing on whether risking the credits won for the chance of winning more constitutes gambling. A player can receive 20 initial credits either by paying one dollar or by presenting a voucher. Because the minimum wager is eight credits, the player can play at most two times unless he wins additional credits. If he does, he can risk those credits for the chance of winning even more. The credits won are worth 5¢ each, regardless of whether they were won during play initiated by paying one dollar or by presenting a voucher. In either case, the player can risk credits worth 5¢ each for the chance of eventually winning up to $500 or $600. Thus, the player would be gambling (risking something of value for the chance of winning a prize) regardless of whether he initiated play by paying a dollar or presenting a voucher.

Finally, the Plaintiffs argue that their video machines fit within the exception provided by Idaho Code § 18–3801(4), which provides that gambling does not include "[m]erchant promotional contests and drawings conducted incidentally to bona fide nongaming business operations, if prizes are awarded without consideration being charged to participants." The Plaintiffs' video machines do not fit within this exception because prizes are awarded with consideration being charged to participants. As stated above, players, who win credits while betting the initial twenty credits and then risk the credits won for the chance of winning more, are charged consideration (credits worth 5¢ each) in order to win prizes. The district court did not err in holding that the Plaintiffs' video machines constituted illegal gambling devices.

**D. Did the District Court Err in Refusing to Rule on Whether the Video Machines Would Be Illegal Gambling Devices if They Were Operated in Some Other Manner?**

After the district court issued its memorandum decision, the Plaintiffs filed a motion requesting additional findings of fact and conclusions of law as to whether the video machines would be illegal gambling devices if they were operated differently than shown during the trial. Although that motion is not in the record, the district court described the motion as follows: "Now Plaintiffs specifically request a legal and factual determination of whether each aspect of the operation of the machines, for instance a sale of a Collector Card and the first promotional game connected with such sale, is legal if successive promotional games are eliminated." In refusing to do so, the district court noted that it has jurisdiction to render a declaratory judgment only in a case where an actual or justiciable controversy exists. *Harris v. Cassia County*, 106 Idaho 513, 681 P.2d 988 (1984). The district court then reasoned as follows:

> Plaintiffs are now clearly requesting a determination of the legal status of their machines based on a hypothetical set of facts. They request a determination on the legality of operating their Machines with a purchase of a game card with a promotional game if successive games are eliminated from the process. These facts do not show a present existing controversy between the parties which permits this Court to adjudicate any present rights. The proposal presents a hypothetical set of facts on how the Machines might be operated in the future. This Court is not em-

powered to issue purely advisory opinions. Even if the question is deemed important, that is insufficient to confer jurisdiction upon the Court. Plaintiffs would certainly benefit from a judicial decree advising them on how to manage their business. However, such advice is best left for their attorneys, not to this Court. (Citation omitted.)

The district court's reasoning is sound, and it did not err in denying the requested additional findings.

### E. Is the State Entitled to an Award of Reasonable Attorney Fees?

The State seeks an award of attorney fees because of the Plaintiffs' repeated motions to alter the burden of proof. In making this request, the State does not cite any statute or rule upon which it bases its claim for attorney fees. The State simply argues, "Plaintiffs' motions below, as well as the presentation of this issue on appeal are without basis and Defendants should, therefore be awarded fees." A party claiming attorney fees must assert the specific statute, rule, or case authority for its claim. *Stevens v. Stevens,* 135 Idaho 224, 16 P.3d 900 (2000). Because the State has not cited any statute, rule, or case law supporting its claim for attorney fees, we will not consider the claim.

### IV. CONCLUSION

The judgment of the district court is affirmed. Costs on appeal, not including a reasonable attorney fee, are awarded to the Defendants.

Chief Justice TROUT, and Justices SCHROEDER and WALTERS concur.

Justice KIDWELL, Dissenting.

I subscribe to the view that the proper role of courts is to interpret laws, not to rewrite laws, no matter how well intentioned the result. In this case the result appears to be invalidating legislation and initiatives that deviate from the majority's definition of "slot machine." Therefore, I dissent.

The majority opinion undertakes to write its own creative and expansive definition of "slot machine." This acknowledges that the language enacted by the legislature is legally deficient. Unfortunately, however, rather than finding the statute void for vagueness, or narrowly construing the statutory language, the majority has arrived at a definition of their own that supplants the language enacted by the legislature. Courts sometimes assume legislative power when they find a statute legally defective but want to save it for a perceived noble or worthwhile purpose. Ultimately, though, the majority's broad new definition of "slot machine" creates even more problems than the plain, though somewhat vague, language of the statute.

To demonstrate just how expansive and mischievous the newly minted definition of "slot machine" is, consider that devices such as personal computers (PC), cellular phones, and personal digital assistants (PDA) fall within the ambit of the majority's definition. The majority defines "slot machine" as used in I.C. § 18–3810 as:

[1] a gambling device [2] which, upon payment by a player of required consideration in any form, may be played or operated, and which, upon being played or operated, may, solely by chance, deliver or entitle the player to receive something of value, [3] with the outcome being shown by spinning reels or by a video or other representation of reels....

(Bracketed numbering added.) "Gambling device" denotes that "there must be risk—the chance of losing all or part of the consideration paid; and there must be a prize—the chance of obtaining something of greater value than the consideration risked."

PC, cellular phone, or PDA, are gambling devices under the majority's definition because using any of these devices, one may "chance ... losing all or part of ... consideration paid" in exchange for "a prize—the chance of obtaining something of greater value than the consideration risked."

Using one of these "gambling devices," one may connect to an Internet gambling site. (This is not to say that one who gambles online does so with impunity. I.C. § 18–3802 makes participating in, or knowingly permitting gambling upon one's property, a misde-

meanor.) Then, "upon payment by a player of required consideration in any form, [the gambling device] may be played or operated, and ... upon being played or operated, may, solely by chance, deliver or entitle the player to receive something of value." Gambling using a PC, cellular phone, or PDA, the required consideration is generally paid using a credit card. Solely by chance, a video representation of reels may align, thus entitling the player to receive something of value—usually a payment into a customer account that the player may use to gamble further or cash out.

If it were merely illegal to *use or operate* a slot machine, this would not present a problem. I.C. § 18–3810, however, makes it illegal to "use, *possess,* operate, *keep,* sell, *or maintain for use or operation or otherwise ... any slot machine of any sort or kind whatsoever.*" Thus, because PCs, cellular phones, and PDAs, are sorts or kinds of slot machines under the majority's definition, they are illegal to *possess* or *keep* even though they are not being maintained for use or operation as a slot machine. Obviously, this constitutes an absurd result and I doubt that anyone will be prosecuted for possession of a PC. However, this example demonstrates how perilous it is for courts to overstep their power to interpret law and, instead, enter the legislative arena.

Because the majority's definition of slot machine includes devices that clearly are not slot machines, it simply goes too far and is unworkable. While I.C. § 18–3810 could arguably be saved by narrowly interpreting the term "slot machine," it cannot be saved by the majority's expansive redefinition that, essentially, rewrites I.C. § 18–3810 to suit its perceived objective.