# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 47098

DERRICK RICHARD LINGNAW, )
  Plaintiff-Appellant, )
                                 )     **Boise, September 2020 Term**
v. )
                                 )
STUART LUMPKIN, in his official )    **Opinion Filed: October 8, 2020**
Capacity as SHERIFF OF CUSTER )
COUNTY, )
                                 )     **Melanie Gagnepain, Clerk**
  Defendant-Respondent. )
                                 )
and )
                                 )
CITY OF CHALLIS, an Idaho )
municipal corporation; CHALLIS )
JOINT SCHOOL DISTRICT NO. 181, )
                                 )
  Defendants. )
_____)

Appeal from the District Court of the Seventh Judicial District of the
State of Idaho, Custer County. Stevan H. Thompson, District Judge.

The judgment of the district court is <u>affirmed</u>.

Fuller Law Offices, Twin Falls, attorneys for Appellant. Daniel Brown
argued.

Custer County Prosecuting Attorney, Challis, attorneys for Respondent.
Justin Oleson argued.

_____

BEVAN, Justice

Appellant Derrick Lingnaw, a registered sex offender, sought declaratory relief from the
district court asking whether he could legally reside on his property. The district court declared
Lingnaw's residence is within five hundred feet of property on which a school is located, as that
term is used in Idaho Code section 18-8329(1)(d). The court thus denied Lingnaw's request to
enjoin the Custer County Sheriff, Stuart Lumpkin, from interfering with Lingnaw's ability to reside
on his property. The court also denied Sheriff Lumpkin's request for attorney fees and costs. On

appeal, the parties mainly dispute the district court's finding that Lingnaw's residence is within five hundred feet of a school. For the following reasons, we affirm the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Lingnaw is a registered sex offender. As such, Idaho Code section 18-8329(1)(d) prohibits Lingnaw from residing "within five hundred feet of the property on which a school . . . is located, measured from the nearest point of the exterior wall of the offender's dwelling unit to the school's . . . property line." In 2017, Lingnaw purchased real property in Challis, Idaho. About a year later, Lingnaw filed a complaint against Lumpkin in an attempt to settle any confusion about the distance between his property and an alleged school property.[1] The complaint requested a declaration on

> the respective rights, status, and other legal relations relating to [Lingnaw's] ability to legally reside at the real property, free of interference from [Lumpkin]. In addition, [Lingnaw] request[ed] that th[e district c]ourt issue an [i]njunction directing the respective parties to comply with the [c]ourt's declaration of rights.

The case progressed to trial where the district court expressed its initial concerns about whether it could grant the relief Lingnaw requested, explaining:

> This is an action for declaratory relief that's been brought by [Lingnaw]. We had some discussion in chambers initially regarding the nature of this case and, I guess, the ability of the court to enter a ruling on this case that would provide some direction or relief to the parties. The court did have some initial concern, I guess, just for the record . . . regarding the appropriateness of declaratory relief actions when the requested relief is for the court to determine whether the petition[er] is in violation of a criminal statute, and get–potentially get relief from prosecution.

Despite its concerns, the district court decided to proceed with the evidentiary portion of the trial.

Lumpkin, Lingnaw, Lani Rembelski, the Superintendent of Challis Joint School District Number 181 ("the District") , , and Jacquel Bruno, the Custer County Assessor, , all testified at trial. Rembelski testified that the District owns the alleged school property. Rembelski also explained that the property encompasses, among other structures not relevant here, a gymnasium, a building currently leased to the Bureau of Land Management ("BLM"), Intermountain Family Services, and some baseball fields. According to Rembelski, the building leased by the BLM contains an auditorium that the District uses approximately once a month. Rembelski testified that

---

[1] The original complaint included as defendants the City of Challis and Challis Joint School District. An amended complaint included as a defendant the Idaho Attorney General. The district court dismissed all defendants except Lumpkin prior to trial.

the District uses the gymnasium almost every day, after school hours, mainly for the junior high school's sport programs. The baseball fields, according to Rembelski, hold no school-sanctioned events. Lastly, Rembelski acknowledged that academic instruction on the alleged school property had not occurred since 2010.

Bruno provided testimony on the distances between Lingnaw's property and (1) the boundary of the alleged school property and (2) the buildings located within the alleged school property. Bruno explained that Lingnaw's residence is located within five hundred feet of the alleged school property because Lingnaw's residence is 173 feet from the alleged school's property line. Moreover, the distance between Lingnaw's residence and the front door of the building leased by the BLM is about 480 feet. Lingnaw conceded at trial that his residence is less than five hundred feet from the alleged school's property line. Despite this acknowledgment, Lingnaw testified that, based on his measurements, his residence is approximately 502 to 504 feet from the gymnasium itself.

After listening to the testimony provided, the district court made its ruling from the bench without closing arguments by the parties. The district court explained:

> It's really only whether [Lingnaw] is now in fact–owns and living in property within 500 feet of a school. And for purposes of this decision, whether you want to call it an advisory decision or otherwise, the court makes that finding, that he does live within 500 feet of a school, as contemplated by the statute. And that's, I think, really the only issue before the court.

The district court entered judgment declaring Lingnaw's residence to be within five hundred feet of property where a school is located and denying Lingnaw's request to enjoin Lumpkin from interfering with Lingnaw's ability to reside on his property. Lingnaw then timely appealed.

After the district court entered judgment, Lumpkin filed a request for attorney fees and costs. The district court denied Lumpkin's attorney fee request. The district court also denied Lumpkin's motion to reconsider. Lumpkin did not file a cross-appeal but he asserts two additional issues before this Court: first, Lumpkin asks whether the district court could grant the relief Lingnaw requested; and second, Lumpkin argues the district court erred in denying Lumpkin's attorney fees request.

## II. ISSUES ON APPEAL

1. Whether the district court had jurisdiction to grant Lingnaw relief under the Idaho Declaratory Judgment Act?

2.       Whether the district court's findings of fact and conclusions of law were erroneous?

3.       Whether the district court abused its discretion in denying Lingnaw the opportunity to present closing argument?

4.       Whether the district court's denial of Lumpkin's request for attorney fees was erroneous?

5.       Whether either party is entitled to attorney fees on appeal?

### III. STANDARD OF REVIEW

We will address the standards of review in turn as directly relevant to each argument on appeal.

### IV. ANALYSIS

The key dispute in this appeal is whether Lingnaw resides within five hundred feet of property where a school is located, based on the language contained in Idaho Code section 18-8329(1)(d). The parties also raise issues of attorney fees and costs, and the lack of closing arguments at trial. Yet before we can address the merits of this case, we must first address the question of jurisdiction under the Idaho Declaratory Judgment Act ("IDJA").

### A.       The district court had jurisdiction under the IDJA to resolve the controversy.

The district court found Lingnaw resided within five hundred feet of property where a "school" is located as that term is used in Idaho Code section 18-8329(1)(d). As a result, the district court denied Lingnaw's request to enjoin Lumpkin from interfering with Lingnaw's ability to reside on his property. In response to Lingnaw's appeal, Lumpkin asserts that Lingnaw's request for a declaration of rights and enjoinment of the sheriff from enforcing the statute was really an attempt to bar future criminal prosecution. Essentially, he argues, the district court lacked jurisdiction to provide relief to Lingnaw under the IDJA. We disagree.

Questions of jurisdiction must be addressed prior to reaching the merits of an appeal. *Bach v. Miller*, 144 Idaho 142, 144–45, 158 P.3d 305, 307–08 (2007). As questions of law, we exercise free review over jurisdictional issues. *Westover v. Idaho Cntys. Risk Mgmt. Program*, 164 Idaho 385, 388, 430 P.3d 1284, 1287 (2018) (citing *Tucker v. State*, 162 Idaho 11, 17, 394 P.3d 54, 60 (2017)). Indeed, "[t]he question of jurisdiction is fundamental and cannot be ignored. Even if jurisdictional questions are not raised by the parties, the Court must address them on its own initiative." *Dickinson Frozen Foods, Inc. v. J.R. Simplot Co.*, 164 Idaho 669, 677, 434 P.3d 1275, 1283 (2019) (quoting *State v. Hartwig*, 150 Idaho 326, 328, 246 P.3d 979, 981 (2011)). We recently stated that "[d]espite the statute's broad statutory reach, this Court has limited the scope

3

of relief provided by the IDJA, holding that it 'applies only in a case where an actual or justiciable controversy exists.' " *Valencia v. Saint Alphonsus Med. Ctr.*, No. 46741, 2020 WL 3980695, at *1, *4 (July 15, 2020) (quoting *Westover v. Idaho Cntys. Risk Mgmt. Program*, 164 Idaho 385, 389, 430 P.3d 1284, 1288 (2018)). Thus, we must first determine whether there was an actual or justiciable controversy to which the district court could provide relief under the IDJA.

The IDJA provides courts may "declare rights, status, and other legal relations, whether or not further relief is or could be claimed." I.C. § 10-1201. The type of matters subject to determination under to IDJA are broadly defined:

> Any person interested under a deed, will, written contract or other writings constituting a contract or any oral contract, or whose rights, status or other legal relations are affected by a statute, . . . may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder.

I.C. § 10-1202. The purpose of the IDJA is remedial. It "is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations, and is to be liberally construed and administered." I.C. § 10-1212. A court "may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding." I.C. § 10-1206. As we have said before,

> [t]he controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*Westover*, 164 Idaho at 390, 430 P.3d at 1289 (2018) (citation omitted).

Lingnaw asked the district court to "issue a declaration of rights as to the parties' respective rights, status, and other legal relations relating to *[his] ability to legally reside at his real property*, free of interference from [Lumpkin]." (Emphasis added). Under Idaho law, it is illegal for a registered sex offender to "[r]eside within five hundred (500) feet of the property on which a school . . . is located, measured from the nearest point of the exterior wall of the offender's dwelling unit to the school's . . . property line[.]" I.C. § 18-8329(1)(d). Here, a declaratory action would provide a clear answer to Lingnaw on the single issue before the court—whether his residence was within

4

five hundred feet of a school. Neither the facts nor situation in this case were hypothetical or advisory. Rather, the court was presented with testimony and facts of the distances involved and the nature of the use of the buildings—so that it could provide a decree of conclusive character. A judgment, whether in favor or against Lingnaw, would resolve this question of whether Lingnaw could legally reside at his residence based on the strictures of Idaho Code section 18-8329(1)(d).

Even so, Lumpkin alleges the district court could not grant the relief Lingnaw requested under the IDJA because the relief sought could bar future criminal prosecution of Lingnaw. In support of his argument, Lumpkin points to *MDS Investments, LLC v. State*, 138 Idaho 456, 65 P.3d 197 (2003). In *MDS*, the plaintiffs sought a declaratory judgment that video machines they owned were not illegal gambling devices. 138 Idaho at 458, 65 P.3d at 199. The plaintiffs specifically asked that the defendants "be required to prove beyond a reasonable doubt that it was illegal to own or use the video machines." *Id*. at 459, 65 P.3d at 200. The district court denied the plaintiffs' request. *Id*. On appeal, the plaintiffs contended "they should be entitled to have their rights defined in a declaratory judgment action so that they d[id] not have to risk criminal prosecution." *Id*. at 460, 65 P.3d at 201. Furthermore, plaintiffs asserted, "the efficacy of using declaratory judgment for this purpose is diminished if . . . the [d]efendants are not required to prove guilt beyond a reasonable doubt." *Id*. They argued the Court could define their rights in a declaratory judgment action where "a judgment in their favor in these actions could bar a subsequent criminal prosecution under the doctrine of res judicata, or that an adverse ruling would establish their criminal liability." *Id*. (footnote omitted). This Court was unpersuaded. *Id*. The *MDS* Court explained that such a ruling "would, in effect, enable persons suspected of criminal activity to take control of their own criminal prosecutions." *Id*. Thus, this Court found the district court did not err in refusing to require the defendants prove beyond a reasonable doubt that the video machines were illegal gambling devices or slot machines. *Id*. at 460, 65 P.3d at 201. The Court affirmed the district court's determination that the video machines were illegal gambling devices as provided by gambling definitions within the Idaho Code. *Id*. at 463–64, 65 P.3d at 204–05.

While the situation presented in *MDS* is similar to the situation at hand, the important difference here is that Lingnaw never sought to hold the Sheriff to a higher burden of proof to deliberately bar subsequent criminal prosecution. As in *MDS*, for the district court to grant the relief he requested, Lingnaw had to prove *by a preponderance of the evidence* that his residence is

5

not located within five hundred feet of property on which a school is located. Had judgment been entered in his favor, it would not have barred future criminal prosecution under the doctrine of *res judicata*, just as the district court's determination in *MDS* did not bar subsequent criminal prosecution for the plaintiffs' possession of illegal gambling devices. *See id.* at 460, 65 P.3d at 201. Likewise, a final judgment in favor of Lingnaw would not extinguish all claims arising out of the same transaction because two different standards of proof apply. The declaratory judgment here would not prohibit a future prosecution. Thus, a judgment here would not act as *res judicata* since it would not "extinguish[] all claims arising out of the same transaction or series of transactions out of which the cause of action arose." *Ticor Title Co. v. Stanion*, 144 Idaho 119, 126, 157 P.3d 613, 620 (2007). Accordingly, as in *MDS*, the district court had jurisdiction to interpret the Idaho Code and give Lingnaw a declaration regarding his right to live on his real property.

**B.      We affirm the district court's ruling that Lingnaw's property is within five hundred feet of property on which a "school" is located.**

The district court, ruling from the bench, found Lingnaw resided within five hundred feet of property on which a school is located as set forth by Idaho Code section 18-8329(1)(d). On appeal, Lingnaw argues that the gymnasium and building leased by the BLM, while owned by the District, do not constitute a "school" as set forth in Idaho Code section 18-8329. According to Lingnaw, because the buildings are not used as a traditional school, i.e., there is no academic instruction occurring there, the district court's ruling that he lives within five hundred feet of a school is erroneous. In response, Lumpkin argues there is substantial and competent evidence to support the district court's finding based on the traditional definitions of "school" and "public school." Moreover, according to Lumpkin, Idaho Code section 18-8329 purposely defined "school" broadly to satisfy its intent in protecting children from sex offenders. We agree that the District's property constitutes a "school" as set forth in Idaho Code section 18-8329(1)(d).

"The review of a trial court's decision after a court trial is limited to ascertaining whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions of law." *Alsco, Inc. v. Fatty's Bar, LLC*, 166 Idaho 516, 523, 461 P.3d 798, 805 (2020). "This Court will not set aside a trial court's findings of fact unless the findings are clearly erroneous." *Mortensen v. Berian*, 163 Idaho 47, 50, 408 P.3d 45, 48 (2017). "Clear error will not be deemed

to exist if the findings are supported by substantial and competent, though conflicting, evidence." *City of Middleton v. Coleman Homes*, LLC, 163 Idaho 716, 727, 418 P.3d 1225, 1236 (2018). "Evidence is substantial and competent if a reasonable trier of fact could accept and rely upon the evidence in making a factual finding. *Id*. "[B]ecause of the trial court's special role to weigh conflicting evidence and judge the credibility of witnesses, [t]his Court will liberally construe the trial court's findings of fact in favor of the judgment entered[.]" *Alsco, Inc.*, 166 Idaho at 523, 461 P.3d at 805 (internal quotations omitted).

Additionally, "[s]tatutory interpretation is a question of law that receives de novo review from this Court." *State v. Burke*, 166 Idaho 621, 623, 462 P.3d 599, 601 (2020).

> We begin statutory interpretation with the literal language of the statute, giving words their plain, usual, and ordinary meanings. In addition, provisions are interpreted within the context of the whole statute, not as isolated provisions. This includes giving effect to all the words and provisions of the statute so that none will be void, superfluous, or redundant. Where the language is unambiguous, we need not consider the rules of statutory construction. Ambiguity is not established merely because differing interpretations are presented to a court; otherwise, all statutes subject to litigation would be considered ambiguous.

*Id*. (internal citations and quotations omitted). Rather, a statute "is ambiguous where reasonable minds might differ or be uncertain as to its meaning." *City of Idaho Falls v. H-K Contractors, Inc.*, 163 Idaho 579, 582, 416 P.3d 951, 954 (2018).

Idaho Code section 18-8329 proscribes registered sex offenders from living near and thus having access to school children. More specifically,

> [i]f a person is currently registered or is required to register under the sex offender registration act . . . it is a misdemeanor for such person to:
> . . . .
> (d) Reside within five hundred (500) feet of the property on which a school . . . is located, measured from the nearest point of the exterior wall of the offender's dwelling unit to the school's . . . property line[.]

I.C. § 18-8329(1)(d). The question before us is whether the gymnasium and building leased by the BLM are a "school," as used in this penal statute. Lingnaw does not argue the term "school" is ambiguous. Rather, Lingnaw argues that the plain meaning of "school" requires some form of traditional educational instruction.

Based on the intent of Idaho Code section 18-8329(d)(1), the district court found the gymnasium constituted a "school." More specifically, the district court found "that the gymnasium,

7

as contemplated by the statute, is a school building utilized by the school for school functions on a regular basis . . . for sporting events and other school activities. And children are coming and going from that building on a regular basis." Because it was "clear from the evidence" that Lingnaw's property fell "well within" five hundred feet or the buildings' property line, the district court found that Lingnaw lived within five hundred feet of a school.

Our analysis begins with a review of relevant statute. *See Burke*, 166 Idaho at 623, 462 P.3d at 601. Idaho Code section 18-8329(1)(d) provides that a sex offender cannot legally "[r]eside within five hundred (500) feet of the property on which a *school* . . is located . . . ." (emphasis added). This section of the Idaho Code defines "school" as either a public or private school. I.C. § 18-8329(1)(e).

Lingnaw and Lumpkin each present a competing, yet reasonable definition of "school" under Idaho Code section 18-8329(1)(d), especially given the unique and shifting uses of these buildings on the District's property. As a result, we hold the term "school" to be ambiguous in this context and turn to our rules of statutory construction to interpret the statute..

As Idaho courts have noted, this chapter of the penal statute "was added by the Idaho Legislature to prohibit offenders' access to school children." *State v. Kinney*, 163 Idaho 663, 667, 417 P.3d 989, 993 (Ct. App. 2018).

> The legislature finds that sex offenders present a high risk of reoffense and that efforts of law enforcement agencies to protect their communities, conduct investigations and quickly apprehend offenders who commit sex offenses are impaired by the lack of information available about individuals who have pled guilty to or have been found guilty of sex offenses who live within their jurisdiction. Therefore, this state's policy is to assist efforts of local law enforcement agencies to protect their communities by requiring sex offenders to register with local law enforcement agencies as provided in this chapter.

*Id.* at 666, 417 P.3d at 992 (quoting I.C. § 18-8302 (1993)). Even the title of the statute at issue declares, "Adult criminal sex offenders—Prohibited access to school children." I.C. § 18-8329. Altogether, the legislature chose to broadly define "school" as any public or private school, with the statute's purpose being to protect school children. *See* I.C. §§ 18-8302, 18-8329(1)(e).

Lingnaw points to the buildings' uses to argue that they do not constitute a school because traditional academic instruction does not occur there. However, this exacting interpretation is too narrow for the purposes of Idaho Code section 18-8329(1)(d). The penal statute was written to

protect school children, not school buildings. Testimony at trial provided that the gymnasium alone was used almost daily for the junior high school's sports programs, while the neighboring auditorium was still used on a monthly basis by the District for school purposes. Thus, despite the lack of academic or traditional classroom instruction, the property remains a place frequented by school children on a daily basis as they attend various school functions and sports programs. Importantly, this statute also measures the distance from a residence to the property line. I.C. § 18-8329(1)(d). It is undisputed that the District owns the property on which the gymnasium, the building leased by the BLM, and baseball fields are all located. The district court found, based on substantial and competent evidence that Lingnaw's residence falls well within five hundred feet of this property line. Accordingly, we agree that the District's property, including the buildings located on the property, constitute a "school" under the broad definition employed by Idaho Code section 18-8329. Because Lingnaw's residence is well within five hundred feet of the school's property line—a fact conceded by the plaintiff at trial and on appeal—we conclude that the district court's interpretation of the term "school" was correct as a matter of law and that there was substantial and competent evidence to support its determination that Lingnaw's residence was located within 500 feet of the school..

**C.      The denial of closing arguments at trial was harmless error.**

At trial, the district court issued its ruling without permitting the parties to present closing arguments. "It can hardly be questioned that closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a . . . case." *Herring v. New York*, 422 U.S. 853, 862 (1975). We agree with these sentiments, even in a civil case without a jury. Thus, we reaffirm that the trial courts of this state should afford closing arguments to the parties in all trials as a matter of course, unless expressly waived on the record.

Even so, we cannot find error here, since Lingnaw's counsel did not object or seek other relief from the court's apparent oversight when the court began to issue its ruling. While counsel made a record of the oversight, he only did so after the court had ruled. When the court apologized for its oversight, counsel failed to ask for an opportunity to make a closing argument at the time, or later file a motion for reconsideration. Notwithstanding the court's unintentional lapse, it made its decision "based on the evidence" presented and ruled on the question before it. The district court explained the main inquiry under section 18-8329(1)(d) was whether Lingnaw resided within

five hundred feet of the school's property line. The district court then concluded from the evidence, including Lingnaw's testimony, that it was clear he lived within five hundred feet of the school's property line.

"Generally Idaho's appellate courts will not consider an alleged error on appeal unless a *timely* objection to the alleged error was made at trial. . . . For an objection to be preserved for appellate review, either the specific ground for the objection must be clearly stated, or the basis of the objection must be apparent from the context." *Hansen v. Roberts*, 154 Idaho 469, 476, 299 P.3d 781, 788 (2013) (emphasis added) (citations omitted). We recognize that counsel are put in an awkward position in these situations by having to interrupt the judge to make a timely objection, but they must still do so to preserve the matter for consideration on appeal.

Even if the district court's oversight were considered error by this Court, "[a] party alleging error on appeal must also show that the alleged errors were prejudicial." *Baughman v. Wells Fargo Bank, N.A.*, 162 Idaho 174, 179, 395 P.3d 393, 398 (2017) (quoting *Saint Alphonsus Diversified Care, Inc. v. MRI Assocs., LLP*, 157 Idaho 106, 122, 334 P.3d 780, 796 (2014)). "[A]lleged errors not affecting substantial rights will be disregarded." *Id*. (quoting *Weinstein v. Prudential Prop. and Cas. Ins. Co.*, 149 Idaho 299, 310, 233 P.3d 1221, 1232 (2010). We conclude that closing arguments would not likely have affected the court's decision interpreting the statute at issue. For these reasons, we find that any error of the district court was harmless. I.R.C.P. 61.

**D.    Lumpkin failed to file a proper appeal to contest the denial of attorney fees.**

Below, and relevant to this appeal, Lumpkin requested attorney fees under Idaho Code section 12-121. The district court denied Lumpkin's request on finding Lingnaw presented legitimate issues to the court. Lumpkin argues the district court erred in denying his request. We conclude that Lumpkin failed to file an appeal to contest this issue.

The district court entered judgment against Lingnaw on April 24, 2019. The court's decision and order on attorney fees was not entered until June 20, 2019, long after the time to appeal the original judgment had expired. Even so, such an order is appealable in its own right under the Idaho Appellate Rules. *See* I.A.R. 11(a)(7). Thus, such an order is equivalent to a judgment from which a party wanting to appeal must file a proper notice of appeal. "A timely notice of appeal is a jurisdictional prerequisite to challenge a decision made by a lower court."

*Twin Falls Cnty. v. Coates*, 139 Idaho 442, 444, 80 P.3d 1043, 1045 (2003). Failure to file such a notice results in the automatic dismissal of the issue on appeal. *See id.*

Lumpkin seeks to reverse the district court's denial of his attorney fee request, but he has failed to file a notice of appeal, which was required of him under I.A.R. 11(a)(7). Thus, we will not address this issue which is not properly before this Court. *See Twin Falls Cnty. v. Coates*, 139 Idaho at 444, 80 P.3d at 1045.

### E.  We decline to award attorney fees on appeal.

Each party requests costs under Idaho Code section 10-1210, and attorney fees under Idaho Code sections 12-117 and 12-121. Idaho Code section 10-1210 provides, "[i]n any proceeding under [the IDJA] the court may make such award of costs as may seem equitable and just." Idaho Code section 12-117 provides an award of attorney fees between adverse parties that involve "a state agency or a political subdivision and a person" where "the nonprevailing party acted without a reasonable basis in fact or law." I.C. § 12-117(1). A political subdivision is "a city, a county, any taxing district or a health district." *See* I.C. § 12-117(6)(d). Meanwhile, Idaho Code section 12-121 provides, in part, "[i]n any civil action, the judge may award reasonable attorney's fees to the prevailing party or parties when the judge finds that the case was brought, pursued or defended frivolously, unreasonably or without foundation." Sections 12-117 and 12-121, however, are exclusive of each other. *See Potlatch Educ. Ass'n v. Potlatch Sch. Dist. No. 285*, 148 Idaho 630, 635, 226 P.3d 1277, 1282 (2010) (declining to award fees under section 12-121 because section 12-117 "is the exclusive means for awarding attorney fees for the entities to which is applies.").

Lumpkin has prevailed in this appeal, but we decline to award him attorney fees. Lingnaw may not have won the merits of his arguments, but he presented a unique issue of statutory interpretation to this Court. The changing nature of the District's property is unusual, and differing facts and the shifting natures of the buildings presented a legitimate controversy about whether the District's property was a "school" under Idaho Code section 18-8329(1)(d). Thus, we do not agree that Lingnaw's appeal was brought without a reasonable basis in fact or law.

## V. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court. We award costs, but no attorney fees, to Lumpkin.

Chief Justice BURDICK, Justices BRODY, STEGNER and MOELLER, CONCUR.

11