# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 49037

STATE OF IDAHO, )
)
   Plaintiff-Respondent, )
)   **Boise, December 2022 Term**
v. )
)   **Opinion Filed: February 8, 2023**
)
GEORGE FERNANDO CUENCA, )
)   **Melanie Gagnepain, Clerk**
   Defendant-Appellant. )
_____ )

Appeal from the District Court of the Third Judicial District of the State of Idaho, Canyon County. Davis F. VanderVelde, District Judge.

The judgment of conviction is <u>affirmed</u>.

Eric D. Fredericksen, State Public Defender, Boise, for Appellant. Ben McGreevy argued.

Raúl R. Labrador, Idaho Attorney General, Boise, for Respondent. Kenneth K. Jorgensen argued.

_____

BRODY, Justice.

This appeal concerns the Sixth Amendment's Confrontation Clause. Prior to voir dire in George Fernando Cuenca's trial for aggravated battery, taking place in the midst of the COVID-19 pandemic, the district court ordered that everyone in the courtroom would wear masks—including witnesses. Cuenca objected that the jury would be unable to assess the witnesses' facial expressions and demeanor during their testimony, which would make it difficult for the jury to judge the credibility of the witnesses. The district court overruled the objection. The trial proceeded, and the jury found Cuenca guilty. Cuenca appeals, claiming his confrontation right was violated by the district court's mask order. For the reasons discussed below, we conclude the district court's order did not violate Cuenca's confrontation right, and affirm his judgment of conviction.

1

## I.  FACTUAL AND PROCEDURAL BACKGROUND

In June 2020, after a late-night altercation, Cuenca stabbed his roommate. Roughly one month later, Cuenca was charged with one count of felony aggravated battery. The case eventually proceeded to trial in April 2021. Prior to voir dire, the district court ordered that everyone in the courtroom, including witnesses, would wear masks during the in-person trial. The district court asked if there were any objections and Cuenca objected, contending that requiring witnesses to wear medical masks while testifying would impair the jury's ability to assess demeanor and "judge credibility." The district court overruled Cuenca's objection based on this Court's order for jury trial procedures during the COVID-19 pandemic. The district court did not reference a specific date for the Idaho Supreme Court order it was enforcing, but the parties agree that the relevant order in effect at that time was issued on October 8, 2020. That order prescribed, among other things, that "[a]ll persons in the courtroom must wear a mask approved by the assigned judge at all times, unless an exception is granted by the assigned judge."

At trial, Cuenca exercised his right not to testify; however, whether Cuenca's stabbing of the roommate was intentional—or in self-defense—was disputed. The prosecution, through the roommate's testimony, contended that Cuenca intentionally stabbed the roommate with a knife. Two other State witnesses testified at trial: first, a detective testified that he found the "12-inch military-style knife" in a laundry hamper in Cuenca's room and that Cuenca did not have any injuries the night of the altercation; and second, a police officer testified that Cuenca was the individual he had interviewed the night of the altercation. The jury unanimously found Cuenca guilty of aggravated battery. At sentencing, the district court imposed a unified sentence of three years with one year fixed, suspended the sentence, and placed Cuenca on probation for five years.

Cuenca asserts that the district court's order requiring witnesses to wear masks while testifying violated his Sixth Amendment right to face-to-face confrontation with his accusers at trial. Cuenca does not challenge this Court's order related to jury trial procedures during the COVID-19 pandemic issued on October 8, 2020.

2

## II.     STANDARD OF REVIEW

"Whether admission of evidence violates a defendant's right to confront adverse witnesses under the Sixth Amendment's Confrontation Clause is a question of law over which this Court exercises free review." *State v. Clapp*, 170 Idaho 314, __, 510 P.3d 667, 673 (2022) (quoting *State v. Stanfield*, 158 Idaho 327, 331, 347 P.3d 175, 179 (2015)).

## III.     ANALYSIS

### A. Cuenca preserved his Confrontation Clause challenge when he objected before trial because the basis for his objection is apparent from its context.

As a preliminary matter, the State argues that this Court should not reach the merits of Cuenca's challenge because it was not preserved below. The State contends that because Cuenca did not invoke the Confrontation Clause or the Sixth Amendment when objecting to the district court's mask order, he did not preserve the issue or take a position on it for purposes of appellate review. In reply, Cuenca acknowledges that his objection did not specifically cite the Confrontation Clause. Nevertheless, Cuenca argues that the preservation requirement has been satisfied because the basis of his objection was apparent from its context. For the reasons below, we conclude Cuenca is correct.

"[T]his Court will not consider issues raised for the first time on appeal." *Siercke v. Siercke*, 167 Idaho 709, 715, 476 P.3d 376, 382 (2020). "A party must raise both the issue and their position on that issue before the trial court for this Court to review it." *Id*. When raising the issue, "either the specific ground for the objection must be clearly stated, or the basis of the objection must be apparent from the context." *Lingnaw v. Lumpkin*, 167 Idaho 600, 609, 474 P.3d 274, 283 (2020) (quoting *Hansen v. Roberts*, 154 Idaho 469, 476, 299 P.3d 781, 788 (2021)). So long as these requirements are met, "the specific legal authorities used to support the position may evolve." *State v. Hoskins*, 165 Idaho 217, 222, 443 P.3d 231, 236 (2019); *see State v. Gonzalez*, 165 Idaho 65, 99, 439 P.3d 1267, 1271 (2019) ("A groomed horse is expected on appeal, but a different horse is forbidden.").

In this case, although Cuenca did not specifically invoke the Confrontation Clause as the authority supporting his position, it is apparent from the context that he was objecting to the mask order as violative of his constitutional right to a physical face-to-face confrontation with his accusers at trial:

THE COURT: All right. The other thing is masks are going to be worn at all times, even by witnesses. I'm going to enforce that mandate even though there is some leeway given. The only time that I would give leeway is, for instance, where we've had people with ASL where they need to read lips. Then I would consider an alternative. But generally speaking, I am going to decline to allow a witness to remove their mask. If you do have objection to that, just please make it once. We'll make it known that that's a standing objection.

[DEFENSE COUNSEL]: *Judge, I'll just go ahead and lodge that objection now. I think it is one of the things that people consider quite heavily when they are evaluating another person's credibility is their facial expressions, body language, things like that. And I think the mask hides that to a large enough degree that I think it makes it difficult sometimes for people to judge credibility. I understand under the current restrictions that we have, but I think I need to make that objection for the record.*

THE COURT: And certainly, Mr. Grove. That's why I wanted to give each of you that opportunity. I do understand the objection. I am going to overrule the objection, Mr. Grove. *I do think that given the Supreme Court order that requiring the witnesses to wear a mask is appropriate.* And I also do think there are other factors that a jury can consider, including that we're used to seeing people in masks at this point, as we've done so for over a year. And I will make note that that is a standing objection, Mr. Grove.

[DEFENSE COUNSEL]: Thank you, Judge.

(Emphasis and alterations added.)

Based on the context of this exchange, Cuenca's objection points to an element of the Confrontation Clause as being violated by the district court's mask order: That the witness is compelled "to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." *California v. Green*, 399 U.S. 149, 158 (1970) (quoting *Mattox v. United States*, 156 U.S. 237, 242–243 (1895)). On appeal, Cuenca's challenge is aimed at the district court's mask order as violative of his confrontation right based on the jury's impaired ability to assess "demeanor"—no different than his position taken below. Although Cuenca now cites to the Confrontation Clause and other authorities in support of his position, he is merely providing a "groomed horse" on appeal—not a new one. Thus, his challenge has been preserved for review.

**B. The district court's order that witnesses must wear medical masks while testifying in-person at Cuenca's trial did not violate his right to confrontation.**

Cuenca argues that the district court's mask order violated his confrontation right under the Sixth Amendment "because it prevented the jury from fully viewing and assessing the

4

demeanor of the witnesses." Although the witnesses were physically present in the courtroom while testifying, with nothing obstructing their view of Cuenca (and vice versa), Cuenca maintains that his confrontation right was violated because covering the witnesses' mouths and noses prevented the jury from "effectively evaluating the credibility of witnesses" and removed the "face" from the "face-to-face confrontation." From this, Cuenca argues that the balancing test under *Maryland v. Craig*, 497 U.S. 836 (1990)—which applies in the absence of a physical, face-to-face confrontation at trial—was not satisfied because the testimony at his trial was unreliable, and the district court did not make sufficiently specific findings that "requiring the witnesses to wear a mask was necessary to further an important public policy[.]"

In response, the State maintains that "the ability to assess demeanor is not a necessary prerequisite" to satisfying the "physical, face-to-face" confrontation right, and even if it were, the balancing test under *Craig*—that applies in the "absence" of a "physical, face-to-face" confrontation—has been satisfied. Whether a mask that covers part of a witness' face while testifying in-court at trial amounts to an "absence" of a "physical, face-to-face" confrontation begs the difficult question of what constitutes a "full" or sufficient "physical, face-to-face" confrontation under the Confrontation Clause. However, we need not decide that question today. Assuming that masks on witnesses at Cuenca's trial caused the "absence" of a "physical, face-to-face" confrontation, the balancing test under *Craig* for such absences shows that Cuenca's confrontation right was not violated by the district court's mask order.

"The Confrontation Clause of the Sixth Amendment, made applicable to the States through the Fourteenth Amendment, provides: 'In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.' " *Craig*, 497 U.S. at 844 (quoting U.S. CONST. amend. VI) (omission in original). The Clause provides two guarantees to criminal defendants: (1) "the right physically to face those who testify against him"; and (2) "the right to conduct cross-examination." *Coy v. Iowa*, 487 U.S. 1012, 1017 (1988). In this case, only the first guarantee is at issue: Cuenca's right "to face those who testify against him" at trial. This guarantee forms the "core of the values furthered by the Confrontation Clause." *Coy,* 487 U.S. at 1017 (quoting *Green*, 399 U.S. at 157). Nevertheless, a "face-to-face confrontation with witnesses appearing at trial" is not an "indispensable element of the Sixth Amendment's guarantee of the right to confront one's accusers." *Craig*, 497 U.S. at 849 (emphasis added).

5

Instead, the Confrontation Clause " 'reflects a *preference* for face-to-face confrontation at trial,' " [quoting *Ohio v. Roberts*, 448 U.S. 56, 63 (1980), *abrogated on other grounds by Crawford v. Washington*, 541 U.S. 36 (2004)], which " 'must occasionally give way to considerations of public policy and necessities of the case, [citing *Mattox*, 156 U.S. at 243]." *Craig*, 497 U.S. at 849 (emphasis in original) (alterations added). Accordingly, under the *Craig* balancing test, a defendant's "right to confront accusatory witnesses may be satisfied *absent a physical, face-to-face confrontation* at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." *Craig*, 497 U.S. at 850 (emphasis added). "Both requirements must be met." *Clapp*, 170 Idaho at __, 510 P.3d at 676 (citing *Craig*, 497 U.S. at 850).

*Craig* and *Coy* provide two examples of what constitutes the "absen[ce]" of a "physical, face-to-face confrontation at trial," *Craig*, 497 U.S. at 850 (alteration added), sufficient to invoke the *Craig* balancing test. In *Craig*, a "face-to-face" confrontation was absent when the accusing witnesses testified out of court—*and* there was a "one-way closed circuit television" procedure that prevented them from viewing the defendant while testifying. 497 U.S. at 840–42 (explaining that the witnesses, prosecutor, and defense counsel withdrew to a separate room—while the judge, jury, and defendant remained in the courtroom—and the witnesses' testimony was recorded and displayed in the courtroom). In *Coy*, a "face-to-face" confrontation was absent when the accusing witnesses testified in court—but with a physical screen between them and the defendant so that they could avoid viewing the defendant while testifying. 487 U.S. at 1014–1020.

Read together, *Craig* and *Coy* show that there *can* be the absence of a "physical, face-to-face confrontation at trial" sufficient to invoke the *Craig* test if either: (1) the accusing witness is physically out of court while testifying at trial, *Craig*, 497 U.S. at 840–42; or (2) the accusing witness is not in the "presence" of the defendant, e.g., a screen prevents the accusing witness from viewing the defendant while testifying, *Coy*, 487 U.S. at 1017. The *Craig* balancing test is also appropriate when a witness is neither in court nor able to view the defendant while testifying. *See, e.g.*, *Clapp*, 170 Idaho at __, 510 P.3d at 673 (telephonic testimony).

Some courts have gone beyond the examples in *Craig* and *Coy* and reasoned that in the absence of a "normal" physical, face-to-face confrontation at trial, *United States v. de Jesus-*

6

*Casteneda*, 705 F.3d 1117, 1119 (9th Cir. 2013), or if there is an "encroachment" upon a face-to-face confrontation at trial, *Romero v. State*, 173 S.W.3d 502, 505 (Tex. Crim. App. 2005), the *Craig* balancing test is applied to determine whether a defendant's confrontation right was violated. *See, e.g.*, *de Jesus-Casteneda*, 705 F.3d at 1119–20 (applying *Craig* when a confidential informant testified in court, in view of the defendant, while wearing a fake mustache and wig to conceal his identity from the defendant and the Sinaloa Cartel); *Romero*, 173 S.W.3d at 503–06 (applying *Craig* when a witness testified in court, in view of the defendant, while wearing dark sunglasses, a baseball cap pulled down over his forehead, and a jacket with an upturned collar in a futile attempt to confer "a degree of anonymity" from a "dangerous" defendant who apparently already knew the witness' name and address by the time of trial).

Furthermore, in the context of face masks during the COVID-19 pandemic, some courts have applied the *Craig* balancing test to testimony from witnesses—otherwise in court and in full view of the defendant (and vice versa)—by reasoning that there was an "infring[ed]" face-to-face confrontation at trial, *United States v. Crittenden*, 2020 WL 4917733, at *5 (M.D. Ga. Aug. 21, 2020) (alteration added), or the absence of a "full," *State v. Modtland*, 970 N.W.2d 711, 716 (Minn. Ct. App. 2022), or "traditional" face-to-face confrontation at trial, *United States v. James*, 2020 WL 6081501, at *2 (D. Ariz. Oct. 15, 2020). *See Crittenden*, 2020 WL 4917733, at *6–7 (holding that the mask procedure requiring witnesses to be physically present in court, under oath, and subject to cross-examination was sufficient to ensure the reliability of the evidence, and that requiring masks while testifying was necessary to further the important public policy of ensuring the safety of everyone in the courtroom); *James*, 2020 WL 6081501, at *2 (same); *Modtland*, 970 N.W.2d at 716 (same); *People v. Lopez*, 75 Cal. App. 5th 227, 232–33 (Cal. Ct. App. 2nd Dist. Div. 8, Feb. 15, 2022) (same).

However, in this case, we do not need to go beyond the facts of *Craig* and *Coy* to decide what constitutes a "normal," "full," or "traditional" physical, face-to-face confrontation at trial because even if a full "physical, face-to-face confrontation" was absent, the district court's mask order satisfies the *Craig* balancing test; thus, Cuenca's confrontation right was not violated.

To reiterate, a defendant's "right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial [1] only where denial of such confrontation is necessary to further an important public policy and [2] only where the reliability of the testimony

7

is otherwise assured." 497 U.S. at 850 (alterations added). Under the first prong, the important interest being advanced for dispensing with a physical face-to-face confrontation at trial requires a "case-specific" finding of necessity, i.e., the trial court must "hear evidence and determine" whether the procedure is necessary to the particular witness. *Clapp*, 170 Idaho at __, 510 P.3d at 676 (quoting *Craig*, 497 U.S. at 676). As to the second prong, whether the reliability of testimony is assured depends on whether, and to what extent, the "elements of confrontation" are present: "physical presence, oath, cross-examination, and observation of demeanor by the trier of fact[.]" *Craig*, 497 U.S. at 846. In this case, both prongs of the *Craig* test have been satisfied.

First, requiring the witnesses in Cuenca's trial to wear masks while testifying was necessary to serve the important public interest of protecting the health and safety of those in the courtroom: the judge, jury, witnesses, Cuenca, attorneys, bailiffs, courtroom staff, and general public. The district court's mask order relied on this Court's October 8, 2020, order related to jury trial procedures during the COVID-19 pandemic. The October 8 order provided that "[a]ll persons in the courtroom must wear a mask approved by the assigned judge at all times, unless an exception is granted by the assigned judge." The stated reason for the October 8 order was to: (1) "allow for the resumption of jury trials while fostering public safety and mitigating against the spread and the continuing rise in COVID-19 cases"; and (2) it was issued due to "the current inability of court administration throughout the state to comply with the minimum safety protocols necessary for addressing the COVID-19 pandemic[.]" The district court's reliance on that standing order was enough to constitute a case-specific finding of necessity as to each particular witness who testified at Cuenca's trial because the relevant public interest—in context of the COVID-19 pandemic—was uniquely particular and common to everyone present in the courtroom at Cuenca's trial.

Second, the reliability of the testimony at Cuenca's trial was assured despite masks covering the witnesses' mouths and noses. The witnesses at Cuenca's trial testified physically in court, with nothing obstructing their view of Cuenca (or vice versa), and every witness testified under oath, subject to cross-examination. The only "element" in the *Craig* balancing test that was affected by the mask order was the jury's ability to see the full demeanor or expressions of the witnesses' faces. More specifically, while the jury was unable to see the mouths and noses of the witnesses, they could see their eyes and bodies. The Confrontation Clause does not require that

8

the jury be able to see *every* aspect of a witness's demeanor during testimony, or every part of their face and body. *See Crittenden*, 2020 WL 4917733, at *7 ("The Confrontation Clause does not guarantee the right to see the witness's lips move or nose sniff, any more than it requires the jurors to subject the back of a witness's neck to a magnifying glass to see if the hair raised during particularly probative questioning.").

Moreover, there were other verbal and non-verbal body language cues to aid the jury in assessing credibility. Although the witnesses' mouths and noses were covered in Cuenca's trial, the jury was free to observe the witnesses' overall body movements, method and manner of speech (e.g., hesitations, tone, volume, pitch, etc.), and eye movement (e.g., rolling eyes, furtive glances, blinking). This is plainly distinguishable from a situation where a witness is testifying out of court *and* no demeanor is visible to the factfinder. *See, e.g.*, *Clapp*, 170 Idaho at __, 510 P.3d at 677 (noting reliability problems where neither the judge nor the parties could view the witness's demeanor during telephonic testimony). Thus, when the partial reduction of demeanor caused by masks is considered alongside the *presence* of every other confrontation "element" at Cuenca's trial, the reliability of the witnesses' testimony was otherwise assured.

Therefore, both prongs of the *Craig* test are satisfied, and the district court's mask order did not violate Cuenca's confrontation right.

## IV.    CONCLUSION

For the reasons set out above, we conclude that the district court's mask order did not violate Cuenca's confrontation right; thus, we affirm his judgment of conviction.

Chief Justice BEVAN, and Justices STEGNER, MOELLER, and ZAHN, CONCUR.

9