2023 IL App (1st) 211038-U

FIRST DISTRICT,
FIRST DIVISION
July 17, 2023

No. 1-21-1038

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 20 CR 09664 |
| | ) | |
| MARC LANAUX, | ) | Honorable |
| | ) | Geraldine D'Souza, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE COGHLAN delivered the judgment of the court.
Presiding Justice Lavin and Justice Pucinski concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant's conviction for aggravated unlawful use of a weapon is affirmed where the use of opaque face masks by testifying witnesses did not prevent him from confronting the witnesses.

¶ 2    Following a jury trial, defendant Marc Lanaux was convicted of aggravated unlawful use of a weapon. Defendant was sentenced to a term of 24 months' probation. On appeal, defendant contends that he was denied his constitutional right to confront three of the witnesses against him because they wore opaque face masks while testifying. For the following reasons, we affirm.

¶ 3                                          BACKGROUND

¶ 4                                COVID-19 Protocols

¶ 5        The trial took place during the COVID-19 global pandemic, so several safety protocols were implemented to protect against contracting or spreading the virus. The courtroom was equipped with plexiglass partitions, the jurors were "socially distanced," and attorneys remained at least six feet away from the jury when presenting exhibits and arguments. Additionally, the trial court required "everyone," including jurors, witnesses, "all the staff, all the attorneys, and the defendant" to wear face masks in the courtroom. The court provided clear face masks to everyone but noted that some jurors found them "very uncomfortable."

¶ 6                                    Pre-Trial

¶ 7        Defendant filed a motion *in limine* to allow "witnesses *** to take off their face mask while speaking, in order to allow the jury to judge the witnesses['] credibility and facial expressions properly." The trial court denied the motion, noting that "the intent is to give clear masks to the witnesses." Citing *Maryland v. Craig*, 497 U.S. 836, 845-46 (1990), the court explained that there were "five elements" to the right to confrontation, including "a physical face-to-face confrontation at trial," and that the confrontation clause is not violated "if the denial of such confrontation is necessary to further any important public policy and *** the reliability of the testimony is otherwise assured." The trial court found that "[t]he mask requirement is necessary to further an important public policy for the safety of everyone in the courtroom in the midst of [the] pandemic." The court also found that the reliability of the testimony would be assured because the "witnesses against the defendant will be physically present in the courtroom. They will testify under oath. The defendant will be able to have these witnesses cross-examined in the open courtroom" and "[t]he defendant and the jurors will be able to observe the witnesses' demeanor."

¶ 8                                      Jury Trial

¶ 9            Following *voir dire*, the trial court asked if defense counsel wanted a clear mask for defendant to wear because the court "already ruled that he cannot take his mask off." Defense counsel responded that defendant "is fine in the mask that he has," and neither party objected to defendant wearing a "plain black mask" when being identified by police officers. The trial court also asked defense counsel if she wanted the jurors to wear clear masks, and defense counsel replied, "I have no objection to them wearing whatever mask they are comfortable with."

¶ 10           At trial, five witnesses testified on behalf of the State: Calumet City Police Officers Keith Bogdanovich, Raymond Hladek, and Sergeant Keith Kwiatkowski, forensic scientist Luke Lemming, and Randal Wilson of the Illinois State Police Firearm Services Bureau.

¶ 11           The evidence generally established the following: On August 23, 2020, at approximately 1:21 a.m., Bogdanovich responded to a call of a "suspicious" car that was "crashed up against a parked vehicle." Bogdanovich arrived at 417 Pulaski Road and found defendant alone in the driver's seat of a silver Volvo, "butted up" against another parked vehicle. When Bogdanovich spoke with defendant, he noted that defendant "appeared to be sleepy" and "kind of seemed to be in a daze not focusing on [him]." When Hladek arrived at the scene, the officers asked defendant whether there was "anything illegal inside the vehicle." Defendant acknowledged that there was "a gun in the center console." Hladek searched the car but did not find a gun in the center console. Instead, he saw "the butt of a gun under the front driver's seat" and recovered a loaded .38-caliber revolver. Defendant did not present a Firearm Owners Identification (FOID) or Concealed Carry License (CCL) and was arrested and brought to the Calumet City Police station. In a video-recorded interview with Kwiatkowski, defendant admitted that he had the gun for "a while" but did not have a FOID or CCL. Wilson testified that, as of August 23, 2020, defendant had an expired

FOID and no CCL.

¶ 12    Prior to starting the second day of trial, defense counsel indicated to the trial court that the three witnesses from the day before—Bogdanovich, Hladek, and Kwiatkowski—did not "have clear masks on" while testifying. Counsel continued, "That is fine, but going forward, we would request that they wear clear masks for testimony." In response, the trial court noted that "clear masks were given to the courtrooms for witnesses to testify at jury trials. I don't believe there was any objection at the time to the witnesses, who were all police officers, who all testified in just cloth masks with no markings on them." The trial court stated that future testifying witnesses would "have the clear masks that have been provided for the court."

¶ 13    The jury found defendant guilty of aggravated unlawful use of a weapon and defendant was sentenced to a term of 24 months' probation.

¶ 14                                ANALYSIS

¶ 15    Defendant contends that his constitutional right to confrontation (U.S. Const., amend. VI; Ill. Const. 1970 art. 1, § 8) was violated when Bogdanovic, Hladek, and Kwiatrowski testified while wearing opaque face masks that covered their noses and mouths, instead of clear masks. The State maintains that there was no error because wearing face masks was necessary to ensure the health and safety of the individuals present and that any error was harmless. We agree.

¶ 16    Although defendant acknowledges this claim was not preserved for appeal, he seeks review under the plain error doctrine or as an ineffective assistance of counsel claim. Pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984), defendant must show that his counsel's representation "fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different." *Id.* at 688, 694. Counsel is not ineffective for failing to preserve meritless issues. *People v. Coleman*, 158 Ill. 2d 319, 349 (1994).

¶ 17      The plain error doctrine permits a reviewing court to consider an unpreserved error when a clear or obvious error occurred and either (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," or (2) "that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatowski*, 225 Ill. 2d 551, 565 (2007). Under either prong, the burden of persuasion rests with the defendant. *People v. Sargent*, 239 Ill. 2d 166, 190 (2010).

¶ 18      "The Confrontation Clause of the Sixth Amendment, made applicable to the States through the Fourteenth Amendment, provides: 'In all criminal prosecutions, the accused shall enjoy the right *** to be confronted with the witnesses against him.' " *Maryland v. Craig*, 497 U.S. 836, 844 (1990) (quoting U.S. Const., amend. VI). The Clause provides two guarantees to criminal defendants: (1) "the right physically to face those who testify against him"; and (2) "the right to conduct cross-examination." *Coy v. Iowa*, 487 U.S. 1012, 1017 (1988). In this case, only the first guarantee is at issue, which forms the "core of the values furthered by the Confrontation Clause." *Id*. Nevertheless, a "face-to-face confrontation with witnesses appearing at trial" is not an "indispensable element of Sixth Amendment's guarantee of the right to confront one's accusers." *Craig*, 497 U.S. at 849.

¶ 19      Instead, the Confrontation Clause "reflects a *preference* for face-to-face confrontation at trial" which "must occasionally give way to considerations of public policy and necessities of the case." (Emphasis in original.) *Id.* Accordingly, under the *Craig* balancing test, a defendant's "right to confront accusatory witnesses may be satisfied *absent a physical, face-to-face confrontation* at

trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." (Emphasis added). *Id.* at 850.

¶ 20    Defendant argues that his right to confront the witnesses was violated because the masks worn by the testifying officers prevented the jury from "observing facial expressions that a juror may use to determine credibility."

¶ 21    We have held that "that the ability to see a juror's nose and mouth is not essential to assess bias, because *demeanor includes various aspects of body language*." (Emphasis added.) *People v. Williams*, 2022 IL App (2d) 200455, ¶ 87; see also *People v. Smart*, 2022 IL App (2d) 210531, ¶¶ 32-41 (holding that the defendant was not denied his right to a fair trial where the jurors were required to wear face masks during *voir dire* because "there are a multitude of ways by which counsel can observe a prospective juror's demeanor without viewing the juror's nose and mouth."). Even when jurors wore opaque facemasks:

> "[D]efendant and his attorney were still able to see the potential jurors' eyes, eyebrows, and forehead; listen to each potential juror's tone of voice; and observe each potential juror's manner of speech and other mannerisms. For instance, defendant and his attorney (as well as the State and the trial court) were able to see if the potential jurors blinked, rolled their eyes, tilted their heads, shifted, squirmed, or otherwise moved while being questioned and while other potential jurors were being questioned. Further, the parties were able to assess each potential juror's tone of voice and whether he or she made any unusual pauses during questioning." *Williams*, 2022 IL App (2d) 200455, ¶ 87.

¶ 22    The same reasoning applies to the testifying witnesses in this case. Although the three testifying officers wore opaque masks, jurors and defendant were able to see their eyes, eyebrows, and foreheads, listen to their voices, and observe their body language and other mannerisms. The

reliability of the witnesses' testimony was also assured because they testified under oath and were subject to thorough cross-examination. Furthermore, the trial court noted before trial that even if the witnesses wore clear masks, the jurors "will not be able to clearly see their nose and mouth." Accordingly, the use of opaque face masks while testifying did not deprive defendant of his right to confront the witnesses.

¶ 23    In dealing with the unprecedented challenges presented by the COVID-19 pandemic, courts around the country have reached a similar conclusion. In *People v. Lopez*, 75 Cal. App. 5th 227 (2022), the reviewing court noted that "numerous federal courts" concluded that "due to the unique and substantial public health risks created by the ongoing global pandemic, the confrontation clause is not violated by having a witness testify in a criminal proceeding with a mask covering the nose and mouth." *Id.* at 232 (Collecting federal cases). The court found that, under the "public interest exception to the face-to-face confrontation requirement discussed in *Craig*," the defendant's right to confront the testifying witnesses was not violated when they wore face masks while testifying considering the "substantial health risks presented by the COVID-19 virus." *Id.* at 233-34. The court reasoned that the reliability of the testimony of the witnesses was otherwise assured because "[t]he witnesses testified in court, under oath and were subject to unfettered cross-examination by counsel" and the masks "did not significantly obstruct the jury's ability to assess witness demeanor. The jurors could see the witnesses' eyes, hear the tone of their voices, and assess their overall body language." *Id.* at 234.

¶ 24    The reviewing court in *State v. Cuenca*, 524 P.3d 882 (Idaho 2023) also found that requiring the witnesses to wear face masks did not violate the defendant's right to confrontation. *Id.* at 887-88. The court noted that "[t]he Confrontation Clause does not require that the jury be able to see the full demeanor or expressions on the witnesses' faces" and found that "when the

partial reduction of demeanor caused by masks is considered alongside the *presence* of every other confrontation 'element' at [the defendant]'s trial, the reliability of the witnesses' testimony is otherwise assured." (Emphasis in original.) *Id.* at 888-89. See also, *State v. Modtland*, 970 N.W.2d 711, 720-21 (Minn. Ct. App. 2022) (finding that the defendant's confrontation rights were not denied when the trial court did not allow the witnesses to remove their face masks while testifying).

¶ 25    In light of the "important public policy" furthered by the precautions taken amidst the COVID-19 pandemic, and the presence of every other confrontation element at defendant's trial, there was no "clear or obvious error" when the three witnesses testified while wearing opaque facemasks. *Craig*, 497 U.S. at 850. Therefore, defendant is not entitled to review of his claim under principles of plain error or as a claim of ineffective assistance of counsel.

¶ 26                                          CONCLUSION

¶ 27    For these reasons, we affirm the judgment of the circuit court of Cook County.

¶ 28    Affirmed.

¶ 29