

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0230-24

## CHAMPAGNE SMITH, Appellant

### v.

## THE STATE OF TEXAS

## ON STATE'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE FOURTEENTH COURT OF APPEALS
## HARRIS COUNTY

SCHENCK, P.J., filed a dissenting opinion in which YEARY and McCLURE, JJ., joined.

## <u>DISSENTING OPINION</u>

This case poses the question of whether the trial court's policy requiring every person in the courtroom, including witnesses providing live testimony in the presence of jurors, to wear a mask violated Appellant's rights under the U.S. Constitution's Confrontation Clause. To be sure, the COVID-19 pandemic

presented many courts with the same question concerning trials during the time in which state and national declarations of disaster were in effect; the answer to that question was uniform: masking requirements do not violate a defendant's confrontation rights.[1] Now, this Court is presented with that question for a trial occurring post-pandemic.[2] While the decision to require masks of all the trial's participants and observers was imprudent and (we are told) evidently political, I do not believe the interference with the juror's ability to observe witness demeanor somehow ripened into a Confrontation Clause violation.

In coming to the conclusion that there is no confrontation violation, the proper focus is whether Appellant's right to physical, face-to-face confrontation has been deprived and whether the distinct elements of confrontation have ensured its purpose. Had this issue arisen before or even in the midst of trial on mandamus, I

---

[1] *See infra* note 6; *Smith v. State*, 693 S.W.3d 781, 790 n.7 (Tex. App.—Houston [14th Dist.] 2024, pet. granted) (citing *People v. Wandrey*, 296 Cal. Rptr. 460, 466 (Cal. Ct. App. 2022); *People v. Alvarez*, 290 Cal. Rptr. 3d 346, 352–54 (Cal. Ct. App. 2022); *State v. Cuenca*, 171 Idaho 603, 524 P.3d 882, 888-89 (2023); *People v. Lanaux*, No. 1-21-1038, 2023 WL 4561547, at *3-4 (Ill. App. Ct. July 17, 2022); *State v. Hardy*, 344 So.3d 821, 834 (La. Ct. App. 2022); *State v. Hunt*, 293 A.3d 423, 431–32 (Me. 2023); *Farmer v. State*, No. 1300, 2023 WL 2806062, at *6 (Md. Ct. App. Apr. 6, 2023); *State v. Modtland*, 970 N.W.2d 711, 717-21, 720 n.3 (Minn. Ct. App. 2022); *State v. Voeltz*, No. A22-0726, 2023 WL 5341512, at *5-7 (Minn. Ct. App. Aug. 21, 2023); *State v. Mountain Chief*, 533 P.3d 663, 672-73 (2023); *Peters v. State*, No. 82437, 2022 WL 17367580, at *1 (Nev. Nov. 30, 2022); *State v. Jesenya O.*, 2021-NMCA-030, 493 P.3d 418, 430–32, *rev'd*, 2022-NMSC-014, 514 P.3d 445; *Commonwealth v. Dixon*, 276 A.3d 794, 805 (Pa. Super. Ct. 2022)).

[2] Governor Greg Abbott issued an executive order on July 29, 2021, prohibiting governmental entities from "mandat[ing] masks" and "requir[ing] any person to wear a face covering or [mandating] that another person wear a face covering." The Governor of the State of Tex., Exec. Order GA-38, 46 Tex. Reg. 4913, 4914-15 (2021).

would have liked to think we would grant relief as an administrative, if not constitutional, matter. In addition to whatever augmented interest Appellant might have in terms of his ability to observe witness demeanor unimpeded, the obstruction of the public's right to be present in court is at least as significant in my view. *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580–81 (1980). Judges do not own courtrooms. They *serve* in them.

Though improvident and improper, the mask requirement here nevertheless does not amount to a constitutional violation. I would hold that the mask requirement did not amount to a deprivation of the physical presence element in this case and Appellant's confrontation rights were accordingly not violated. Because the majority holds otherwise, I dissent.

## BACKGROUND

The pertinent factual and procedural background concerns the course of trial proceedings. Appellant's trial commenced in Harris County in January of 2023, wherein the trial court required all persons to wear facial coverings while in the courtroom except if in-court identification was necessary. The requirement applied to all persons, including witnesses, and to all stages of trial. It was also apparently applied continuously by the trial judge and applied to all proceedings in that court. Still, by the time of trial, many orders and regulations that had permitted masking

requirements in Harris County were no longer in effect or were subject to proceedings to conclusively eliminate them.[3]

Appellant's trial nevertheless proceeded under the trial court's masking requirement and without resort to any administrative attack by mandamus or otherwise, despite the various orders and regulations forbidding the practice at that point.  Appellant objected to the requirement on Sixth Amendment grounds, arguing the masks inhibited the jury's ability to assess witness's demeanor and credibility. The trial court overruled the objection without a response from the State and did not issue findings of fact or conclusions of law.

The court of appeals held that the masking requirement violated the Confrontation Clause because it prevented Appellant from receiving the guarantee of physical, face-to-face confrontation.[4]  It reversed the judgment and remanded for a new trial, and we granted the State's petition for discretionary review.

## DISCUSSION

### I.     THE COMBINED EFFECT OF THE FOUR ELEMENTS OF CONFRONTATION CLAUSE ENSURED ITS PURPOSE

The Confrontation Clause of the Sixth Amendment, made applicable to the States through the Fourteenth Amendment, provides: "In all criminal prosecutions,

---

[3] *Smith*, 693 S.W.3d at 790–92; *Abbott v. Harris Cnty.*, 672 S.W.3d 1, 21 (Tex. 2023).

[4] *Smith*, 693 S.W.3d at 793–94.

the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI; *Pointer v. Texas*, 380 U.S. 400, 401 (1965).

The Clause "guarantees a criminal defendant the right to directly confront adverse witnesses, cross-examine adverse witnesses, and be present at any stage of the trial that would enable the defendant to effectively cross-examine adverse witnesses." *Sixth Amendment at Trial*, 54 GEO. L.J. ANN. REV. CRIM. PROC. 792, 804–05 (2025) (collecting cases). Functionally, the Clause "protects a defendant's right of cross-examination by limiting the prosecution's ability to introduce statements made by people not in the courtroom." *Smith v. Arizona*, 602 U.S. 779, 783–84 (2024). The Clause accordingly must be interpreted "in a manner sensitive to its purpose and to the necessities of trial and the adversary process." *Maryland v. Craig*, 497 U.S. 836, 849 (1990).[5] The U.S. Supreme Court "ha[s] never doubted, therefore, that the Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." *Coy v. Iowa*, 487 U.S. 1012, 1016 (1988) (citing *Kentucky v. Stincer*, 482 U.S. 730, 748, 749–750 (1987) (Marshall, J., dissenting)).

---

[5] U.S. Supreme Court Justice Alito has recently acknowledged the amorphous nature of the jurisprudence surrounding the interpretation of the Confrontation Clause with respect to its original meaning. *Franklin v. New York*, 145 S. Ct. 831, 831 (2025) (Alito, J., statement respecting denial of certiorari) ("Despite repeated attempts to explain what *Crawford* meant by 'testimonial statements,' our Confrontation Clause jurisprudence continues to confound courts, attorneys, and commentators."). I do not delve into interpreting the Clause's origin in this case.

### A. Demeanor and Physical Presence are Distinct Elements of the Confrontation Clause

The U.S Supreme Court has identified four elements that collectively ensure the right to confrontation: 1) physical presence; 2) oath; 3) cross-examination; and 4) observation of demeanor by the trier of fact. *Craig*, 497 U.S. at 846. The "combined effect" of these distinct elements collectively "serve[] the purposes of the Confrontation Clause by ensuring that evidence admitted against an accused is reliable and subject to the rigorous adversarial testing that is the norm . . . ." *Id.* Being different, they are not necessarily equal.

It is physical presence of the witness, as opposed to any of the other elements alone or in combination, that anchors the *Craig* analysis and, in turn, any evaluation of a claim of deprivation. "[A] defendant's right to confront accusatory witnesses may be satisfied *absent a physical, face-to-face confrontation* at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." *Id.* at 850 (emphasis added) (citing *Stincer*, 482 U.S. at 739).

"Although demeanor evidence is . . . of . . . high significance, it is nevertheless well settled that it is not an essential ingredient of the confrontation privilege . . . ." *Gov't of Virgin Islands v. Aquino*, 378 F.2d 540, 548 (3d Cir. 1967). While the demeanor of a witness is also significant, infringements on that aspect of confrontation alone typically will not impede the core interest in forcing witness

accountability for his or her testimony or amount to a categorical denial of the face-to-face encounter so critical to confrontation. *See Romero v. State*, 173 S.W.3d 502, 505–06 (Tex. Crim. App. 2005) ("The physical presence element entails an accountability of the witness to the defendant.").

To date, the U.S. Supreme Court has never held—or considered—whether disruption of the demeanor element would, on its own, constitute a violation of the confrontation right. *See* Tim Donaldson, *Gradually Exploded: Confrontation vs. the Former Testimony Rule*, 46 ST. MARY'S L.J. 137, 189 (2015) (explaining how the demeanor element can be relevant but has not been recognized as an independent criterion). While many courts have discussed the demeanor element, they have typically done so in connection with a more serious absence of physical presence.[6] Contrarily here, the witness was otherwise physically present and fully accountable for his or her testimony in any fashion that would affect its reliability.

---

[6] Federal courts have repeatedly found no denial of the physical presence element of the Confrontation Clause where masking protocols were enforced. *See, e.g.*, *United States v. Holder*, No. 18-CR-00381-CMA-GPG-01, 2021 WL 4427254, at *9 (D. Colo. Sept. 27, 2021) (holding face-to-face confrontation not denied due to COVID-19 protocols and finding reliability of witness testimony was otherwise assured); *United States v. Crittenden*, No. 4:20-CR-7 (CDL), 2020 WL 4917733, at *6 (M.D. Ga. Aug. 21, 2020) (holding mask procedure did not deny face-to-face confrontation because adverse witnesses were physically present, sworn under oath, and defendant had ability to cross-examine); *United States v. James*, No. CR-19-08019-001-PCT-DLR, 2020 WL 6081501 (D. Ariz. Oct. 15, 2020) (witness masking requirement only had a possibility of interfering with demeanor and did not interfere with physical presence, oath, or ability to cross-examine).

Accordingly, only the physical presence element triggers the *Craig* analysis. *See, e.g.*, *United States v. Tagliaferro*, 531 F. Supp. 3d 844, 851 (S.D.N.Y. 2021) (no denial of physical confrontation where jurors wore masks and defendant argued he was unable to assess credibility and demeanor); *Morales v. Artuz*, 281 F.3d 55, 59 (2d Cir. 2002) (holding *Craig* and *Coy v. Iowa*, 487 U.S. 1012 (1988), inapplicable as "clearly established" law foreclosed application where the defendant argued inability to assess demeanor, but not denial of face-to-face confrontation). When the physical presence element is at issue, the *Craig* analysis is two-fold: 1) first, it asks whether the defendant's right to the face-to-face component of the confrontation clause was denied; 2) if yes, it then triggers the second question of whether "denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." *Craig*, 497 U.S. at 850.

Should the answer to the threshold issue of whether there is a denial of the face-to-face component of confrontation in the first place be no, the *Craig* analysis is simply not implicated. *Id.*; *Finley v. State*, 707 S.W.3d 320, 342 (Tex. Crim. App. 2024) (Yeary, J., dissenting) ("[T]he *Craig* criteria . . . appl[ies] only where the procedure utilized actually *denies* the defendant the core aspect of confrontation altogether.").

The court of appeals and the majority both operate on the assumption that the physical presence element has been denied, foregoing that initial step of the analysis which allows the assessment of public policy interests. As noted below, Appellant does not even allege a disruption of the right to physical presence in this case. Thus, without an affirmative finding of a denial of Appellant's right to physical, face-to-face confrontation, there should be no second step of the *Craig* analysis.

The antecedent question in this case should be whether Appellant's physical, face-to-face confrontation right was denied. *Craig*, 497 U.S. at 850. To solve this issue, our task in is not exclusively to weigh the public policy interests of the trial court's mask requirement, as that evaluation would still assume that a physical, face-to-face denial occurred. Further, an unfavorable weighing of public policy alone does not necessarily mean that the Confrontation Clause was violated, nor that the violation caused harmful constitutional error. *Cf.* Maj. Op. at 6–9.

The majority simply defers to *Romero* and the *Finley* plurality and concludes Appellant's right to face-to-face confrontation was also denied here—without making the requisite distinction between physical presence and demeanor. *See id.* at 4–9. The Court in *Romero* quite properly addressed the threshold issue of whether there was a denial of physical presence in the first instance and found it to be so heavily disrupted as to permit the witness to avoid accountability for his testimony. *Romero*, 173 S.W.3d at 505. The plurality in *Finley*, though, did not explicitly

address the issue before moving forward. 707 S.W.3d at 342 (Yeary, J., dissenting) ("[The] predicate question remains unaddressed, and its resolution appears necessary to a full and satisfactory disposition of the claims presented."). To that end, the *Finley* plurality is not a holding of this Court, and "is not worth the data storage used to post it on the Court's website." *Wells v. State*, No. PD-0669-23, 2025 WL 1699563, at *2 (Tex. Crim. App. June 18, 2025) (Newell, J., concurring).

As to the Court's consideration of demeanor in those cases, *Romero* considered both elements but ultimately determined that the *Craig* analysis was invoked after it determined that the presence element had been compromised. 173 S.W.3d at 502. In *Finley*, demeanor was considered as an additional impact, though the plurality simply invoked *Craig* with the bare finding that "Appellant's Sixth Amendment right to face-to-face confrontation was ultimately denied." 707 S.W.3d at 331.

### B. Defendant's Right to the Face-To-Face Component of the Confrontation Clause Was Not Denied In Any Event

Coming now to the core question, Appellant did not complain on direct appeal nor address on petition for discretionary review the predicate issue of the denial of his physical face-to-face confrontation right. Instead, Appellant complained on appeal that his confrontation rights were violated because the mask requirement

would inhibit the jury's ability to assess demeanor and credibility.[7] Those complaints alone do not invoke the *Craig* analysis. *See Craig*, 497 U.S. at 850; *Artuz*, 281 F.3d at 59 ("*Craig* and *Coy* set[s] forth the appropriate test where the witness is physically separated from the defendant."); *see, e.g.*, *Romero*, 173 S.W.3d at 505–06 (applying *Craig* where the physical presence element of confrontation was compromised); *Finley*, 707 S.W.3d at 331 (applying *Craig* upon finding denial of face-to-face confrontation). Even assuming Appellant implicated the physical presence element, the mask requirement did not deprive Appellant of physical, face-to-face confrontation.

First, the witnesses were physically present in the courtroom during testimony, testified under oath, and were subject to cross-examination by counsel and observation by the jury throughout. *Craig*, 497 U.S. at 850. In contrast to the facts in *Coy* and *Craig*, the witnesses in this case were actually present in the courtroom before Appellant and within his scope of vision. *See United States v. Tagliaferro*, 531 F. Supp. 3d at 844 ("In rejecting Tagliaferro's physical confrontation, cross-examination, and *voir dire* challenges, the Court is reinforced

---

[7] The court of appeals did not address whether Appellant argued that the physical presence element was violated on direct appeal, and only cites that Appellant challenged demeanor and credibility. *Smith*, 693 S.W.3d at 785–86. Before this Court, Appellant does not posit that his right to the physical presence element of confrontation was denied and only argues that "a surgical mask at least in part affects the physical-presence element of the Confrontation Clause and the jury's ability to assess demeanor." This is not a shortcoming on the part of the brief or counsel. There is simply no basis for asserting that a duly sworn witness who is present in the courtroom and subject to in-person cross-examination is not present and accountable for his or her testimony.

in its conclusion by the fact that Tagliaferro fails to marshal in support of his cause any ascertainable principle that is rooted in the history and tradition of the Confrontation Clause."). Additionally, the jurors could assess witness credibility and demeanor by observing "body language" and "delivery." *See id.* (citing *Artuz*, 281 F.3d at 60–62).

Second, unlike *Romero*, "the reliability of witness testimony" in this case "was otherwise assured; jurors were able to observe how witnesses moved, spoke, hesitated, and even cried," the witnesses were not disguised, their eyes were visible, and had no degree of anonymity due to the ability to remove the masks for identification. *See Holder*, 2021 WL 4427254, at *9.

In conclusion, there was no denial of Appellant's face-to-face confrontation right as part of the physical presence element, and I disagree with the majority to the extent it implicitly finds otherwise.

## II. THERE IS NO BASIS FOR RESOLVING THE HARM QUESTION ON BREIFING WAIVER

Next, I agree with the majority to the extent it disavows the court of appeals's resort to briefing waiver to answer the harm question. Maj. Op. at 9–13. However, I see no need to address the harm question beyond my disagreement with reliance on waiver as a method of avoiding a merits disposition.

Texas Rule of Appellate Procedure 44.2.(a) provides that, where there is constitutional error subject to harmless error review, "the court of appeals must

reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." TEX. R. APP. P. 44.2(a). The Rule does not provide for automatic default where the State does not meet its burden akin to a waiver provision.[8] Quite the opposite is true; the *Appellee* is under no obligation to file a brief, much less one that materially assists the court to an extent it finds helpful.

Where a court finds the briefing lacking, it may request or direct further briefing and assistance as necessary to permit "a satisfactory submission of the case." *Id.* R. 38.9(b). But, it may not simply pick up the ball and go home. This point is made clear beyond just the briefing rules. The court "must not . . . reverse a judgment . . . for formal defects or irregularities in appellate procedure without allowing a reasonable time to correct . . . ." *Id.* R. 44.3. And, regardless of the recalcitrance of counsel in refusing to amend or supplement a brief, it is for the court to determine whether the error contributed to the conviction. *Id.* R. 44.2(a).

While I commend my colleagues for embracing these rules, I am concerned by our repeated citation to authorities of this Court that appear to suggest otherwise. While it seems clear from our holding here that these decisions are incorrect insofar

---

[8] The majority delves into an explanation of the State's burden to prove harmless error on appeal under *Chapman v. California*, 386 U.S. 18 (1967). While *Chapman* certainly provides guidance and clarity on the burden of proof required for the beneficiary of the error to show that the error was harmless, it is nevertheless up to the court receiving such proof—by means of the record if not the briefing—to make that determination.

as they appear to invite non-merits resolutions and reversals of criminal convictions without actual discernment of the presence of harm, I believe we would be better served in expressly disavowing any such holding. Absent that explicit clarification, confusion in the lower courts may continue.

## CONCLUSION

The central issue before us is whether Appellant's right to confront witnesses against him was violated by a trial court requiring those witnesses to wear masks during testimony. The predicate issue carried with it that must be answered—that both the court of appeals and the majority do not address—is whether there was a denial of face-to-face confrontation. I would find that Appellant was not denied face-to-face confrontation rights and accordingly hold that the Confrontation Clause was not violated. Therefore, I dissent.

Filed: November 20, 2025

Publish