

# In the Court of Criminal Appeals of Texas

---

No. PD-0634-22

---

TAYTON SETH FINLEY,

*Appellant*

v.

THE STATE OF TEXAS

---

On Petition for Discretionary Review
On Court's Own Motion
From the Second Court of Appeals
Tarrant County

---

YEARY, J., filed a dissenting opinion.

Appellant was charged by information with misdemeanor assault. He was tried in county court, during the second year of the Covid-19 pandemic, in July of 2021. The trial court permitted the complaining

witness to testify against Appellant while wearing a surgical mask that covered her nose and mouth. In doing so, it overruled Appellant's objection that testimony given in this manner violated his Sixth Amendment right to confrontation.

The Second Court of Appeals agreed with Appellant that a Sixth Amendment violation occurred, and it reversed his conviction. *Finley v. State*, 655 S.W.3d 504 (Tex. App.—Fort Worth 2022). We granted discretionary review on our own motion to examine the propriety of the court of appeals' ruling. TEX. R. APP. P. 66.1, 67.1. I would vacate the court of appeals' judgment and remand the case to that court for further proceedings.

## I. BACKGROUND

### A. At Trial

The information alleged that Appellant assaulted T.G.,[1] his sometime girlfriend and mother of his child, on June 29, 2019. By the time the case came to trial, in July of 2021, the Covid-19 pandemic was well into its second year, with the Delta variant of the virus gaining prevalence. Even so, the County Criminal Court was not, at that point, mandating that all participants and spectators wear masks to protect from the virus, and there is no indication in the record that many of them were.[2]

When T.G. appeared to testify, she was wearing a surgical mask

---

[1] The court of appeals referred to the complaining witness only by her initials, and, like the Court, I will follow suit. *Finley*, 655 S.W.3d at 506 n.1.

[2] Appellant did not object that any other witness testified while masked during the three-day trial.

that covered her nose and mouth. Appellant requested the trial court to instruct her to remove the mask for the duration of her testimony, arguing that the social distancing protocols in place should provide sufficient protection.[3] The prosecutor replied that, in view of "the situation in the world[,]" "if she wants to wear a mask, I'd ask that she be allowed to wear a mask." The trial court judge agreed, remarking that "if [T.G.] wants to wear a mask, I'm not going to tell her she can't." He then overruled Appellant's objection.[4]

## B. On Appeal

On direct appeal, Appellant complained that his Sixth

---

[3] As of July of 2021, the Texas Supreme Court's thirty-eighth pandemic-related emergency order was in effect. *See Thirty-Eighth Emergency Order Regarding COVID-19 State of Disaster*, 629 S.W.3d 900 (Tex. 2021) (effective May 26, 2021, to expire August 1, 2021). As the court of appeals noted:

> This order required that, "subject only to constitutional limitations," courts should take all "reasonable action to avoid exposing court proceedings and participants to the threat of COVID-19." *Id.* Further, a trial court was permitted to conduct jury proceedings if the local administrative judge had adopted "minimum standard health protocols for court proceedings" to include "masking, social distancing, *or both.*" *Id.* at 901.

*Finley*, 655 S.W.3d at 507 n. 2 (emphasis added). At the time of Appellant's trial, as the court of appeals observed, "[m]asks were voluntary for anyone in the courtroom including witnesses." *Id.* at 506.

[4] It is unnecessary to disposition of the issues before us to recount the facts of the offense as developed at trial. The court of appeals summarized the State's evidence. *Finley*, 655 S.W.3d at 507−08. Suffice it to say that Appellant was convicted, and the trial court sentenced him to 300 days in jail and a $4,000 fine. The trial court also entered an affirmative finding that the offense involved family violence, under Article 42.013 of the Texas Code of Criminal Procedure. TEX. CODE CRIM. PROC. art. 42.013.

Amendment confrontation right was violated by the fact that T.G. was permitted to wear a mask while testifying. In reversing the conviction, the court of appeals implicitly treated the wearing of a surgical mask as a sufficient impediment or impairment to the Sixth Amendment's preference for "face-to-face" confrontation as to call into play the requirements of *Maryland v. Craig*, 497 U.S. 836 (1990). *Finley*, 655 S.W.3d at 512−13. In *Craig*, the United States Supreme Court decided that, "absent a physical, face-to-face confrontation at trial," a trial court must make a "case-specific" finding detailing why dispensing with the right of a defendant to meet "face-to-face" with his accuser is necessary to further an important public policy interest. *Id*. at 857−58.

Considering that the Covid-19 protocols then in place did not include a strict mask requirement, the court of appeals found that the public health emergency presented by the virus could not, by itself, provide the particularized-need showing that *Craig* requires. *Id*. at 514−15. As the court of appeals explained:

> [B]ecause the trial court did not mandate face coverings during [Appellant's] trial, it apparently believed that all participants were adequately protected in the courtroom without needing to wear masks. We are given no explanation as to why T.G. herself needed the protection of a mask when others did not. At no point in these proceedings—not at any pretrial hearing, at trial, on appeal, or upon abatement of the appeal—has any evidence been adduced to explain why T.G. needed this special protection.[5]

---

[5] Prior to issuing its opinion, the court of appeals had abated the case to permit the trial court to make specific findings, if any, with respect to why T.G.—in particular—required the additional protection of a face mask while testifying. The trial court returned lengthy findings, as set out verbatim in the

*Id.* at 514. In the absence of a case-specific showing of a particular need for T.G. to wear a mask while testifying, the court of appeals concluded that Appellant's Sixth Amendment confrontation right was violated. *Id.* at 515. Finding that the State also failed to establish that the error was harmless beyond a reasonable doubt, the court of appeals reversed Appellant's conviction. *Id.* at 517.

### C. On Discretionary Review

In its petition for discretionary review, the State presented a single ground: "Did the trial court need to make explicit particularized findings on the record regarding T.G.'s need to wear a COVID-19 face mask while she testified even though T.G. was testifying during a global pandemic?"[6] This Court refused the State's petition, but then granted

court of appeals' opinion. *Finley,* 655 S.W.3d at 509–12. But the court of appeals concluded that simply invoking the general public-health exigencies of a global pandemic, as it perceived the trial court had done, was not enough. It said:

> Simply put, T.G. should not have been permitted to testify while wearing a mask unless the trial court could articulate, from the evidence before it, a justifiable reason why she specifically, in this particular trial, needed to wear a mask in a courtroom where masks were not otherwise required.
>
> \*       \*       \*
>
> [T]he State invites us . . . to fashion a COVID-19-pandemic exception which would alleviate the need for the trial court to enter the requisite [case-specific] findings. We decline the invitation.

*Id.* at 513–15.

[6] In its petition for discretionary review, the State did not challenge the court of appeals' holding regarding harm. Nor did we grant review of the issue of harm on our own motion. That issue is therefore not before us, and we do

discretionary review on its own motion, ordering the parties to brief the following questions:

> (1) If a witness testifies at a criminal trial while wearing a surgical mask that covers the witness's nose and mouth, is a defendant's Sixth Amendment right to face-to-face confrontation denied?
>
> (2) Is there a general exception during a global pandemic to the Sixth Amendment Confrontation Clause and in-person confrontation?
>
> (3) If there is a global pandemic exception, at what point does a global pandemic begin, and at what point does a global pandemic end?
>
> (4) If particularized findings are necessary, were the findings in this case sufficient to dispense with face-to-face confrontation because doing so was necessary to further an important public policy, and the reliability of the testimony was otherwise assured?

*Finley v. State*, No. PD-0634-22 (Tex. Crim. App. Mar. 8, 2023) (order not designated for publication). The parties have now briefed these issues, and the case has been submitted to the Court *without* oral argument.[7]

---

not need to address it in the present proceedings. That the Court today addresses it anyway is, in my view, at least an anomaly.

[7] In this case, the State requested oral argument, but this Court, as it has done in so many cases before, denied oral argument—much to my chagrin. I am of the opinion that this Court should only very, very rarely deny oral argument when it is requested by a party to litigation before this Court. But since 2015, this Court has never permitted oral argument in more than 51% of granted discretionary review cases where argument was requested. And in most years since 2015, we have permitted oral argument in only from 26% to

42% of the cases in which it was requested. The chart below shows the disturbing trend that over half of the litigants who seek permission to appear before this Court for oral argument are regularly turned away.

| Year | Granted PDRs | PDRs Requesting Oral Argument | PDRs Granted with Oral Argument | Percentage Requesting Argument Granted |
|------|--------------|------------------------------|--------------------------------|----------------------------------------|
| 2015 | 63 | 43 | 18 | 41.860% |
| 2016 | 69 | 51 | 26 | 50.980% |
| 2017 | 64 | 35 | 15 | 42.875% |
| 2018 | 50 | 34 | 9 | 26.471% |
| 2019 | 52 | 32 | 12 | 37.500% |
| 2020 | 53 | 40 | 14 | 35.000% |
| 2021 | 50 | 29 | 10 | 34.483% |
| 2022 | 32 | 23 | 8 | 34.783% |
| 2023 | 32 | 25 | 11 | 44.000% |

Why do we turn away so many litigants who seek to appear before us to present oral argument? Are we too busy? By my rough count, our sister court—the Supreme Court of Texas—heard sixty-three oral arguments in 2023 alone. By contrast, in the same year, this Court heard just eleven arguments in discretionary review cases.

Even more troubling is the fact that, in 2023, just twenty-five petitions for discretionary review (PDR) requested oral argument—meaning we could have permitted argument in every case in which it was requested and still we would have heard only half the number of cases argued as our sister court entertained. Why do more attorneys not request argument when having their cases heard in the Court of Criminal Appeals of Texas—the high court of our state for all criminal matters? Presumably, if a case makes it all the way to this Court, the issues involved are at least worthy of discussion in oral argument. They often involve important questions of constitutional law, or of statutory construction, or at least questions about which lower appellate courts (or appellate court justices), have had some disagreement. Has our now widely-known reluctance to grant oral argument resulted in fewer litigants even requesting oral argument in the first place?

And it gets worse. In 2023, we granted review of just thirty-two PDRs, indicating that we could have permitted oral argument in every case in which we granted discretionary review and still we would have heard only half the

## II. CONFRONTATION

The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" U.S. CONST. amend. VI.[8] As long ago as 1895, when the Supreme Court of the United States decided *Mattox v. United States*, 156 U.S. 237 (1895),[9] it described "[t]he primary object" of the Confrontation Clause to be:

> to prevent depositions or *ex parte* affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness, in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the

cases orally argued as our sister high court heard in the same year. And, I might add that this Court could have heard argument in *every* case in which argument was requested over the two-year span between 2022 and 2023 and *still* heard fewer arguments than the Supreme Court of Texas did in 2023 alone.

In 2024, this Court is on track to have permitted fewer than sixteen oral arguments by the end of the year. It disturbs me that we so commonly deny oral argument when it is: (1) such a central part of the process of appellate litigation, (2) the only opportunity for the litigants to converse with this Court face-to-face before we decide their case (perhaps ironically, given the Confrontation Clause issues presented in this case), and (3) the only part of our internal process—other than the actual issuance of our decisions and judgments—that can be openly viewed by the public at large. The practice of oral arguments in this Court has been dying a slow death for a long time. I hope the Court will consider reversing the trend.

[8] The Sixth Amendment Confrontation Clause has been held to apply to the states as well as to the federal government. *Pointer v. Texas*, 380 U.S. 400, 406 (1965).

[9] *Mattox* constitutes the Supreme Court's "earliest case interpreting the [Confrontation] Clause[.]" *Craig*, 497 U.S. at 845.

> manner in which he gives his testimony whether he is worthy of belief.

*Id.* at 242−43. To simply read witness testimony from a transcript of a previous trial, the Supreme Court observed, would potentially deprive the accused "of the advantage of that personal presence of the witness before the jury which the law has designed for his protection." *Id.* But even such protections, said the Supreme Court, "however beneficent in their operation and valuable to the accused, must occasionally give way to considerations of public policy and the necessities of the case." *Id.*

In *Coy v. Iowa*, 487 U.S. 1012 (1988), the Supreme Court gleaned from its previous precedents "two types of protections" that the Confrontation Clause confers upon a criminal defendant: (1) "the right physically to face those who testify against him," and (2) "the right to conduct cross-examination." *Id.* at 1017 (quoting *Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987)). The first of these protections, the Supreme Court recounted, embodied "the 'literal right to "confront" the witness at the time of trial[.]'" *Id.* (quoting *California v. Green*, 399 U.S. 149, 157 (1970)). The Supreme Court also observed that it had characterized this right as "the core of the values furthered by the Confrontation Clause." *Id.* (quoting *Green*, 399 U.S. at 157).

The prosecution in *Coy* had placed a screen between the complaining witnesses and the defendant that "was specifically designed to enable the complaining witnesses to avoid viewing [the defendant] as they gave their testimony[.]" *Id.* at 1020. The Supreme Court left little doubt that it concluded the screen violated the defendant's right to confrontation. In fact, it described the violation this

way: "It is difficult to imagine a more obvious or damaging violation of the defendant's right to a face-to-face encounter." *Id.*

The Supreme Court acknowledged its previous recognition "that [the] rights conferred by the Confrontation Clause are not absolute, and may give way to other important interests." *Id.* at 1021. But the Supreme Court side-stepped that issue there and did not identify what the interests were that might overcome the right to face one's accuser. Instead, the Supreme Court observed, "[s]ince there have been no individualized findings that [the] particular witnesses [in that case] needed special protection, the judgment [t]here could not be sustained by any conceivable exception." *Id.* at 1021.

In *Maryland v. Craig*, which was decided four years after *Coy*, the Supreme Court did squarely address the circumstances under which a public-policy-based necessity exception to the right of confrontation *would* apply. In that case, the trial court had approved the State's invocation of a Maryland statutory procedure permitting a court "to receive, by one-way closed[-]circuit television, the testimony of a child witness who [was] alleged to be a victim of child abuse." *Id.* at 840. But the "[t]he Court of Appeals of Maryland reversed and remanded for a new trial" after it found that "the showing made by [Maryland] was insufficient to reach the high threshold required by [*Coy*]" *Id.* at 43.

The Supreme Court went on in *Craig* to explain that "the face-to-face confrontation requirement is not absolute." *Id.* at 850. Addressing the issues raised in that case, the Supreme Court stated that the preferred face-to-face encounter may be dispensed with only: (1) "where denial of such confrontation is necessary to further an important public

policy[,]" and (2) "where the reliability of the testimony is otherwise assured."[10] *Id*. The Supreme Court observed that "a State's interest in the physical and psychological wellbeing of child abuse victims may be sufficiently important to outweigh, at least in some cases, a defendant's right to face his or her accusers in court." *Id*. at 853. It also explained that "it [was] confident that use of the one-way closed-circuit television procedure, where necessary to further an important state interest, [did] not impinge upon the truth-seeking or symbolic purposes of the Confrontation Clause." *Id*. at 852.

Finally, in *Craig*, the Supreme Court "vacate[d] the judgment of the Court of Appeals of Maryland and remand[ed] the case for further proceedings." *Id*. 860. But along the way the Supreme Court reiterated that

---

[10] Whether the reliability of T.G.'s testimony is otherwise assured is not an issue in this case in the posture that it comes before us, since the court of appeals did not pass upon that question. In *Craig* itself, the Supreme Court found that reliability of the testimony of the child witnesses was otherwise assured because the statutory procedure utilized there preserved every confrontation right *except* the defendant's right to a procedure that would not prevent the witness from seeing him while testifying. 497 U.S. at 851. The witnesses in *Craig* were competent, testified while under oath, and were subject to contemporaneous cross-examination, and the factfinder was able to view their demeanor as they testified (albeit remotely). *Id*. These *other* aspects of the confrontation right, the *Craig* court held, were adequate to assure that the witnesses' testimony was "otherwise reliable" notwithstanding the fact that they could not see the defendant as they testified. *Id*.

Here, there was no question about T.G.'s competence, and she was under oath and subject to lengthy and rigorous cross-examination. Most importantly, the jury was not *wholly* incapable of judging her demeanor, even assuming their ability to do so was at least partially blocked by the surgical mask. Thus, it is hard to imagine that this second aspect of the *Craig* exception to the "preference for face-to-face confrontation" has not been satisfied, and Appellant does not contend otherwise.

> [t]he central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact.

*Id.* at 845.

### III. ANALYSIS AND DISPOSITION

The first question that we ordered the parties to brief in this case involves an issue that the court of appeals did not explicitly address in its opinion: whether allowing a witness to testify while wearing a surgical mask that covers her nose and mouth actually constitutes a violation of the "core" face-to-face confrontation right to begin with.[11] If the answer to that question is no, then there would be no need to fall back on the *Craig* criteria at all, which apply only where the procedure utilized actually *denies* the defendant the core aspect of confrontation altogether. *See Craig*, 497 U.S. at 850 ("[A] defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial only where *denial* of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured.") (emphasis added). Does the wearing of a surgical mask altogether "deny" the fact-finder's

---

[11] It is arguable that even the core "face-to-face" component of the Confrontation Clause requires no more than simple physical presence within the same location and without physical barriers that would prevent person to person observations. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED (2002) at 812 (defining "face-to-face" to mean "**1 :** within each other's sight or presence **:** involving close contacts **:** in person"). Even assuming that "face-to-face" confrontation requires more than just physical presence without barriers and includes exposure of at least some part or parts of the face, it arguably may not require exposure of the *entire* face.

ability to evaluate the witness's demeanor and comportment for truthfulness to such a degree that the witness may only testify if the *Craig* criteria are satisfied?

Earlier this year, the Idaho Supreme Court identified a similar question in relation to a criminal trial that was held during the Covid-19 pandemic. That court explained: "Whether a mask that covers part of a witness' face while testifying in-court at trial amounts to an 'absence' of a 'physical, face-to-face' confrontation begs the difficult question of what constitutes a 'full' or sufficient 'physical, face-to-face' confrontation under the Confrontation Clause." *State v. Cuenca*, 524 P.3d 882, 886 (Idaho 2023). The Idaho court was able to side-step this predicate question, however, because it decided that, even "[a]ssuming that masks on witnesses at Cuenca's trial caused the 'absence' of a 'physical, face-to-face' confrontation, the balancing test under *Craig* for such absences shows that Cuenca's confrontation right was not violated by the district court's mask order." *Id.*

In the instant case, in contrast, the court of appeals found that the *Craig* criteria were *not* satisfied, and on that basis, it concluded that Appellant's confrontation rights had not been preserved. But by jumping directly to the *Craig* factors, the court of appeals avoided first resolving the logical predicate question, as identified by the Idaho court: whether the mask worn in this case constituted a sufficient denial of the core confrontation right in the first instance, so as to then require satisfaction of the *Craig* criteria at all. As a result, in this case, that predicate question remains unaddressed, and its resolution appears necessary to a full and satisfactory disposition of the claims presented.

A mask is, after all—at its core—simply one example of an article of apparel. Undergarments are commonly worn underneath overgarments. Shirts are often adorned with ties or scarves. Pants and skirts are often adorned by belts and sashes. Some people wear hats. Other people wear glasses, some more glamorous than others—the glasses worn by the musician Elton John in some of his live performances comes to mind. Some people wear earrings, nose rings or studs, necklaces, other kinds of jewelry and adornments, and even dental grills on their teeth. Some religious people are also known to wear objects that cover all or part of their heads. And others are known to wear face-coverings. Doctors and nurses frequently wear scrubs, gloves, and masks. And sometimes ordinary citizens wear various kinds of masks as well to cover up injuries or other aspects of their appearance—the "eye-patch" comes to mind.

Most articles of apparel have some purpose. Sometimes that purpose is modesty or fashion. At other times it might be to protect one from injury, from the cold, from disease, or from embarrassment. Indeed it is conceivable that a witness might even wear an adornment of apparel with a specific and intended purpose at odds with the rights guaranteed to criminal defendants by the Confrontation Clause—to conceal from the defendant and fact-finder their identity, or even their demeanor and comportment for truthfulness in a trial.[12] Every piece of apparel worn by a witness covers up that witness to some extent and

---

[12] Such a witness could certainly be questioned about their motive for wearing such an article of apparel and be subjected to the crucible of cross-examination about that choice.

impedes a fact-finder's ability to observe at least that part of the witness that is covered by the article of apparel worn. But do all or any of these articles of apparel actually bring about a denial of the right to confrontation guaranteed by the Sixth Amendment such that the articles must be removed before the witness may testify unless the *Craig* criteria are satisfied?

In *Coy* the Supreme Court addressed a scenario in which a physical barrier, unattached to either the defendant or his accusers, impeded the ability of each of them to see the other. In *Craig*, that same Court addressed a scenario in which the accuser was permitted to appear and testify remotely, not even in the courtroom in the physical presence the defendant at all, but by closed-circuit television. In both of those cases, the Supreme Court addressed circumstances involving a complete denial of some undeniable aspect guaranteed by the Sixth Amendment right to confront one's accuser.

This Court has also addressed a circumstance in the past in which a witness was permitted to appear and testify in what seems to have been a complete disguise. *Romero v. State*, 173 S.W.3d 502 (Tex. Crim. App. 2005). In that case, the witness in question was "wearing dark sunglasses, a baseball cap pulled down over his forehead, and a long-sleeved jacket with its collar turned up and fastened so as to obscure [his] mouth, jaw, and the lower half of his nose." *Id*. at 503. According to this Court, "[t]he net effect and apparent purpose of [the witness's] 'disguise' was to hide *almost all of his face* from view." *Id*. (emphasis added). The circumstances were such that one could scarcely discern a difference from those circumstances present in *Coy*, in which the witness

and the defendant were completely separated by a barrier.

But the circumstances present in this case seem much closer to those at issue in *Morales v. Artuz*, 281 F.3d 55 (2d Cir. 2002). In that case, only a part of the witness's face and eyes were obscured by dark sunglasses. *Id.* at 56. Albeit examining only whether the state court decision to permit the witness to wear dark sunglasses violated clearly established federal law, the Second Circuit concluded: "[W]e doubt that permitting [the witness] to testify behind dark sunglasses was contrary to constitutional law established by the Supreme Court." *Id.* at 62.

The question seems fairly presented here whether only a partial obstruction of T.G.'s face—caused by her wearing of a surgical mask—constituted such an impediment as to require consideration of the criteria set forth in *Craig*. Both the parties and the court of appeals seem to have assumed that use of the surgical mask altogether denied the fact-finder's ability to evaluate the witness's demeanor and comportment for truthfulness to such a degree that the witness could only have been properly permitted to testify wearing the mask if the *Craig* criteria were satisfied. The parties have proceeded in their briefing on that assumption. But in my view, that assumption is premature.

The United States Supreme Court has yet to set the precise parameters for what constitutes the "core" face-to-face confrontation right. *Craig* stands for no more than the proposition that *when* it can be definitively concluded that that core right has been denied, the persistence of other aspects of the confrontation right may compensate for that denial. But *Craig* did not purport to define the absolute limit

beyond which a clear violation has occurred, or to what extent (if any) a mere *impairment* of that core confrontation right would amount to the kind of *denial* that would trigger the application of the *Craig* criteria. So, the question remains: Does a witness's wearing of a surgical mask that covers her nose and mouth so impede a fact-finder's evaluation of her demeanor and comportment for truth as to constitute a denial of the core right to confrontation and therefore violate the Sixth Amendment, at least absent satisfaction of the criteria described in *Craig*?

Rather than address that question for the first time on discretionary review, it would be more appropriate for this Court to remand the case to the court of appeals to address it in the first instance. As a discretionary review court, this Court does not (or maybe I should say: "should not") ordinarily reach the merits of an issue not "decided" by a lower appellate court. *See Menefee v. State*, 287 S.W.3d 9, 18 (Tex. Crim. App. 2009). When resolution of that issue is necessary to a proper disposition of the case, we should remand the case for the court of appeals to consider and resolve the issue, subject to our own later discretionary review. *Id.* All of that said, I do not believe the court of appeals could properly reverse the conviction in this case based on its application of the *Craig* criteria without first addressing the predicate question of whether the core confrontation right at issue was actually denied to begin with.

Accordingly, I would vacate the judgment of the court of appeals and remand this case to that court with instructions to consider the first issue we asked to be briefed in this case; and I would invite the court of appeals to solicit additional briefing to the extent that it may find that

the briefs of the parties up to this point have not adequately addressed that issue. What I would not do is reach the merits of that issue in the first instance, as the Court does today, having failed to obtain the input of the court of appeals. I respectfully dissent.

**FILED:**                                                          November 27, 2024
**PUBLISH**